## Frank Van Hoesen v. Alexander Cameron.

*Warranty of soundness—Usage.*

1. One who sues on a warranty of the soundness of a horse can show by the testimony of a former owner that the horse while owned by him was diseased, if the disease was one which might have resulted in subsequent unsoundness.

2. A warranty of the soundness of a horse, unless expressly restricted, extends to all manner of soundness, whether known to the vendor or not, and the question whether the animal was in any way unsound at the time of sale is for a jury.

3. In an action upon a warranty the allowance of a hypothetical question which did not relate to the condition of the article sold at the time of the sale was held to be cured by a cross-examination which supplied the omission and placed all the facts necessary to the formation of an opinion before the witness.

4. Usage cannot be shown to modify the essential terms of a contract, whether expressed or implied, nor be shown at all if it conflicts with the settled rules of law, or unless it is known to the parties. It is

54 MICH—39

contracts made in the ordinary course of business without particular stipulation that are presumed to be made in the light of usages.

5. A custom among horse dealers that a warranty shall not extend to latent defects cannot be shown to affect a horse trade with a man who was not accustomed to dealing in horses, and to whom an explicit warranty of soundness was given.

6. A request to charge that has no testimony to base it on is properly refused.

Error to Kalamazoo.   (Mills, J.)   June 25.—Sept. 23.

Assumpsit.   Defendant brings error.   Affirmed.

*Oscar T. Tuthill* for appellant.

*Germain H. Mason* for appellee.

CHAMPLIN, J.   This action is assumpsit for a breach of warranty of soundness of a horse.

The plaintiff bought a span of black mares of defendant in April, 1882 ; one was known as the Sleeper mare, and the other as the McAllister mare.   The plaintiff claimed and gave testimony tending to prove that at the time of purchase defendant warranted the McAllister mare to be all right and sound in every respect.   This was on the 10th of April, and on the 15th of April she was found to be sick, and he sent for a veterinary surgeon, by the name of Sutton, who pronounced her disease pleuro-pneumonia.   She remained sick until the 8th of May, when she died.   Dr. Sutton made a post-mortem examination on the 9th of May, which he described with particularity.

To entitle the plaintiff to recover, it was necessary for him to show that the horse was unsound on the 10th of April when he purchased.   His theory was, and his testimony tended to prove, that the mare in question was diseased from the effect of a previous attack of pleurisy at the time he purchased, and that such disease continued, and finally resulted in the death of the animal.   It was held in *Briggs v. Crick* 5 Esp. 99, that in an action against the vendor of a horse, upon a warranty of soundness, he might call as a witness the one who had sold and warranted the horse sound to

him, or any other former proprietor of the horse, who had sold him with a like warranty, to prove the soundness of the horse. Within the same principle it was competent for the plaintiff to show that this mare was sick with the pleurisy or pleuro-pneumonia while McAllister owned her. The testimony of Dr. Sutton, showing that he had treated her for the same disease of which she afterward died, and that it had continued and had not been eradicated in the meantime, was competent and admissible testimony. Of the same character was the testimony of the other witnesses introduced by the plaintiff, tending to prove that the mare was affected with some disease of the chest before she was sold to the plaintiff. It tended to support the plaintiff's theory, and its weight was for the jury, considered with all the other testimony in the case. There is no rule of law which confines the purchaser in an action upon a warranty of soundness to the exact day of sale, or to the appearance of the animal on that day. Horses being subject to secret maladies, it is the very object and purpose of a warranty of soundness to protect the purchaser against such latent defects, and the advantage derived from an express warranty of soundness is that it extends to every kind of soundness known and unknown to the seller; and if at the time of sale the animal had any infirmity upon her which rendered her less fit for present service, the warranty, if one existed as plaintiff claimed, was broken.

The question of soundness or unsoundness is one peculiarly fit for the consideration of a jury, and this Court will not feel justified in setting aside a judgment rendered upon a verdict of a jury when the evidence is conflicting, if the case has been fairly submitted to them under proper instructions, unless there has been substantial error committed which the Court can see affects the rights of parties.

Dr. Sutton, after giving testimony showing his knowledge of the mare both before and after the sale to plaintiff, and after describing what he found upon the post-mortem examination, was permitted to give his opinion as to whether the mare was sound on the 10th day of April, 1882, at the time

she was sold to plaintiff. The testimony given by this witness was what is usually denominated expert testimony; and the opinion of the witness upon the question of soundness at the time of sale was relevant and proper. Expert testimony was introduced on the part of the plaintiff to prove that the mare was unsound at the time of sale to plaintiff, the witnesses not having seen the mare but basing their opinions entirely upon what was claimed to have been facts testified to in the case. Two hypothetical questions were asked,—one calling for the opinion of the witness of the disease of which the animal died; and the other as to whether or not in the opinion of the witness she was sound on the 10th of April, 1882. Counsel for defendant objected to the question as being incompetent and improper "in that it did not state the facts in this case as they were disclosed in the evidence; that there was no testimony that the post-mortem examination was correct, but on the contrary there was no compression of the right lung or any difficulty noticed in that organ, but that it was an assumed state of facts not based on proof." And on the argument in this Court counsel insists that the question was faulty because it did not assume as a fact that at the time of sale the mare "acted well, performed well, and in all respects nothing wrong about her could be noticed, upon careful examination."

The fact of soundness on the 10th of April being the fact in issue under plaintiff's claim, any hypothetical question which omitted the condition of the mare on that day must have been erroneous, if not cured by subsequent examination of the witness; but the record discloses that after making objection to the question on that ground the counsel for defendant, in the cross-examination of the witness, supplied the omission and called out from him his opinion based upon these additional facts, and including them in the question, that the animal was diseased on the 10th day of April. Taking the direct and cross-examination together, all the facts upon which it was competent to base an opinion were placed before the witness, and the jury could determine what weight to give to the opinion expressed, and also whether

such facts had been established to their satisfaction. The defendant's counsel states in his brief that the hypothetical question assumes facts which do not appear in the evidence, but he fails to point out the facts assumed that do not appear in the evidence. We have, however, very carefully examined the record, and we fail to discover the discrepancy, if any exists. The expert testimony was properly admitted.

The defendant controverted the allegation that he warranted the mare sound, and in this respect the testimony of the plaintiff and defendant stood directly opposed to each other. Defendant's theory was that the mare was sound on the 10th of April, 1882, and that the disease with which she was attacked on the 15th of April, and of which she died on the 8th of May, was acute pleurisy; and he produced the evidence of experts who gave evidence tending to support his theory. The defendant asked the witness Fuller the following question: "Are you acquainted with the custom or usage here, in the sale of horses, with reference to the statement or words 'sound and all right,' when used with reference to selling horses?" This was objected to as calling for a legal conclusion; and thereupon the defendant's counsel stated that he "proposed to show what the custom or usage is here, and was at that time, as the general understanding of the word 'sound,' when used in the selling of horses, to be such among dealers in horses that it was such a state of facts as, upon careful examination by good judges, would have been pronounced sound from all appearances and indications." The testimony was excluded. The defendant's counsel insists that this was a most important error, affecting the rights of defendant and the law in the sale of horses.

It is well settled that parties contracting are supposed to do so with reference to the *known* usages and customs which enter into and govern the subject-matter to which the contract relates, and all contracts made in the ordinary course of business, without particular stipulations to the contrary, are presumed to be made in reference to the usages and customs which exist; but this rule is subject to the wholesome limitation that such usage must not conflict with the settled rules

of law, nor go to defeat the essential terms of the contract, either expressly or by implication. *Magee v. Atkinson* 2 M. & W. 442; *Adams v. Wordley* 1 M. & W. 374; *Trueman v. Loder* 11 Ad. & El. 589; *Yates v. Pym* 6 Taunt. 446; *Ins. Co. v. Wright* 1 Wall. 456; *Barlow v. Lambert* 28 Ala. 710; *Lewis v. Thatcher* 15 Mass. 431; *Homer v. Dorr* 10 Mass. 26; *Barksdale v. Brown* 1 N. & McC. 517; *Allen v. Dykers* 3 Hill 593; *Hinton v. Locke* 5 Hill 437; *Gross v. Criss* 3 Grat. 262; *Barnard v. Kellogg* 10 Wall. 384; *Blackett v. Royal Exch. Assurance Co.* 2 Cr. & J. 249; *Simmons v. Law* 3 Keyes 219; *Coxe v. Heisley* 19 Penn. St. 243.

Where a contract is clear, certain and distinct, it cannot be modified by proof of usage, for the reason that it disposes of all customs by its own terms which alone regulate the rights of the parties and determine their liabilities. A contrary doctrine would work incalculable mischief, and make the rights of property depend, not upon the contract of the parties governed by established principles of law, but upon what is called the custom of particular places, so that every town and village in the State will have its own particular code in conflict with the settled law. In cases where evidence of usage is admissible at all, it is only on the ground that the parties who made the contract are both cognizant of the usage, and must be presumed to have made their agreement with reference to it. In the record before us there is nothing in the case which tends to show that the plaintiff had any knowledge of such custom as defendant sought to prove. The evidence is that he was a farmer, and had purchased such horses as he had needed upon his farm, and had sold some from his farm; but in what market he purchased or sold does not appear. The testimony does not show him to have been a dealer in horses, and consequently the offer to show the existence of a custom among dealers in horses in Kalamazoo did not tend to show that plaintiff was cognizant of such custom.

The conclusive answer to the proposition is that the custom sought to be proved was inconsistent with the contract of

warranty. The plaintiff had given evidence tending to prove the contract, and the defendant had been sworn as a witness in his own behalf, and had denied making any warranty of soundness, as testified to by the plaintiff. Under these circumstances it was not competent for him to give evidence of a custom among dealers to show that a warranty of soundness did not extend to latent defects unknown to defendant, or to such defects as were not apparent to good judges upon a careful examination. The case comes directly within the principle laid down in *Yates v. Pym* 6 Taunt. 446, and the other cases cited above, and the evidence was properly excluded. The court was careful to instruct the jury upon the defendant's theory and proofs, that a warranty of soundness might be restricted in terms, as the seller saw fit, and that he could not be held liable beyond that, and that if they should find, from the evidence, that the defendant said to plaintiff: "The mare is all right, so far as I know. I think she is sound. I know nothing to the contrary,"—or words to that effect, while the negotiations were going on, and at the time of sale, then he could not be held liable in this action.

The defendant's counsel requested the court to instruct the jury that "the test in this case is, did Cameron assume to assert a fact of which Van Hoesen was ignorant, or merely his opinion or judgment upon a matter of which he had no special knowledge, of which Van Hoesen may be expected also to have an opinion and to exercise his judgment. And this intention is a question of fact for the jury to find from the nature of the sale and the circumstances attending it." This was properly refused. There was no testimony in the case to base such request upon. The testimony upon which plaintiff based his right of recovery was not founded upon expression which might be construed as expressions of opinion, but upon an express warranty in these words: "The McAllister mare. I have known her ever since McAllister brought her here last fall, and I have known her to be all right and sound in every respect, and I will warrant her to be so, and at that I took the mares." Here was no assertion

of opinion or expression of judgment, but a positive undertaking by defendant that the mare he was then selling was then all right and sound in every respect. The language expressed the intent without ambiguity, and the real question for the jury to find was whether he did make the warranty as·plaintiff claimed.

The court properly instructed the jury that the questions to be determined by them were: *First.* Did the defendant warrant the mare was sound at the time he sold her to the plaintiff? *Second.* Was she sound at that time? *Third.* If the warranty was made, and the mare was not sound at the time of sale, what, if any, damage has the plaintiff sustained? That the burden of proof was upon the plaintiff to establish by a preponderance of evidence that the warranty was made by defendant, as he claimed, and that the mare was at that time unsound of the disease of which she subsequently died ; and that if they should find that the warranty was made as claimed by plaintiff, and at that time she was diseased, or suffering with the seeds of disease which necessarily, in the ordinary course of events, caused her death, the plaintiff would be entitled to recover ; and that, if they should find from the evidence that she was at the time of sale sound and free from disease, or from the seeds of disease which must necessarily, in the ordinary course of events, have caused her death, although they should further find from the evidence that she afterwards became unsound, still such subsequently acquired disease would furnish no grounds of recovery in this action ; that to entitle the plaintiff to recover in this case, they must find that the cause of disease existed in the animal at the time of sale. And the court instructed the jury as to the rule of law relative to warranty of soundness as follows :

" The rule of law as it is laid down in the books in this class of cases is, that if, at the time of the sale, an animal has any disease which actually does diminish the actual usefulness of the animal so as to make it less capable of work of any description, or which, in its ordinary progress, will diminish the natural usefulness of the animal ; or if the

animal has, either from disease or accident, undergone any alteration of structure which either actually does at the time of sale, or in its ordinary effects will diminish the usefulness of the animal, such animal is unsound."

We think the court gave the proper instructions to the jury covering the whole issues, and with great propriety avoided a discussion of the facts which were entirely within the province of the jury; and although we have not discussed all the errors alleged and exceptions taken, which were ably and forcibly presented to us on the argument of the case, yet we have considered all the points raised and perceive no error in the record, and the judgment is

Affirmed.

The other Justices concurred.