MELOCHE v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY CO.

1. CARRIERS—ACCEPTANCE OF GOODS FOR TRANSPORTATION—LIABILITY.

A railroad company becomes immediately liable as a common carrier, where goods properly marked for shipment are placed inside its freight depot for immediate transportation, with the agreement by its agent that they will be shipped the following morning, although no shipping bill or written contract is given.

2. SAME—EXPRESS CONTRACT—CUSTOM.

Where plaintiff in an action against a carrier of freight relies upon an express contract for the transportation of goods, a custom cannot change its terms.

3. NEW TRIAL—EXCESSIVE VERDICT—APPEAL.

The action of the circuit judge in denying a motion for a new trial, based upon the alleged excessive character of the verdict, will not be disturbed on appeal, where some of the evidence, which is very conflicting on the question of damages, fairly tends to support the verdict.

Error to Marquette; Stone, J. Submitted January 7, 1898. Decided March 1, 1898.

Case by Hercules N. Meloche against the Chicago, Milwaukee & St. Paul Railway Company to recover the value of goods destroyed by fire while in defendant's depot. From a judgment for plaintiff, defendant brings error. Affirmed.

*W. S. Hill* and *Gad Smith* (*H. H. Field*, of counsel), for appellant.

*Potter & Sedgwick* (*A. B. Eldredge*, of counsel), for appellee.

LONG, J. Plaintiff is the survivor of the firm of Meloche Bros., who, prior to August 25, 1896, carried on a drug business in the village of Ontonagon, this State. Some days before that time, the firm had closed its drug store, and packed the goods for shipment to Ishpeming, and in the forenoon of that day had them carted to the defendant's freight depot for shipment over its road to Ishpeming. In the afternoon of the same day, a fire occurred in Ontonagon, destroying almost the entire village, and burning defendant's freight depot, together with the goods of Meloche Bros. This action is brought to recover the value of the goods so destroyed. The principal defense was that the goods had not been delivered to or accepted by the defendant at the time of the fire. The plaintiff testified that he delivered them at the depot on the morning of the day of the fire; that the packages were directed to "Meloche Bros., Ishpeming, Mich.," and that he requested immediate shipment; that the agent of the defendant agreed to ship them, and send a shipping bill next day to him, at Ishpeming. The defendant introduced testimony tending to show that the goods were not marked, and that, when plaintiff requested shipment, it absolutely refused to ship them until the same were marked. The court instructed the jury that the first question for them to determine was:

"Were those goods, after being marked, as claimed by plaintiff, delivered to and accepted by the defendant, to be transported to Ishpeming? If you say, 'No,' that is the end of the case. * * * If you say, 'Yes,' then the only other question for you to decide is, What was the value of the goods then and there?"

The court further charged:

"If there is a recovery at all, it must be because those goods were fully and fairly delivered into the possession of the defendant as common carrier, and accepted by it as such, under the promise that it would forward them to Ishpeming. That would constitute an acceptance by it as common carrier. Common carriers of freight are liable, whether careful or not, for any act or damage not caused by the act of God or the public enemy. Their liability does not arise from negligence or want of care simply. It arises from their failure to make an absolute, safe carriage and delivery, which they insure by their undertaking. * * * The fire was not such an act of God as would excuse the defendant."

Counsel for the defendant contend that the court was in error in refusing to direct a verdict for the defendant, and in the charge as given. It appears from the testimony of the plaintiff that, the day before the goods were left at the depot, he went there, and had a talk with Mr. Mathews and Mr. Jones about the shipment, and ascertained the rate. After the goods were in the depot, he again went there, and saw these parties, Mathews and Jones, from whom he had ascertained the rate the day before. They then told him they could not ship the goods that day, as they had no cars. This was between 10 and 11 o'clock, and the train was to leave at 11 on which the plaintiff was going to Ishpeming. While at the depot, he found that the goods had been attached. He went to the justice's office, paid that claim, and returned to the depot. He claimed to have been gone but about 20 minutes. On his return, he again saw Mathews and Jones. As to what then took place, the plaintiff testified as follows:

"I then had a further conversation with Mr. Jones and Mr. Mathews. I said, 'Can you ship these goods?' They

said they hadn't any car. 'We cannot ship them this morning.' * * * I asked them for a shipping bill or receipt. He says, 'I will send it to you by mail in the morning.' I had made no shipping bill.

"*Q.* You asked him for a receipt, and he told you he had no time?

"*A.* He had no time. He would send it to me by mail in the morning. * * * I asked him if I could depend on it, and he said, 'Yes.'"

The plaintiff further testified that this was about 20 minutes before the train left, and that his brother and himself left on the train. This testimony is contradicted by the defendant, evidence being given that no contract was ever made; and considerable testimony was further given tending to show that the plaintiff, immediately after the attachment case with the justice was settled, took the train, and left Ontonagon, without further talk about the shipment of the goods, and that, in fact, the plaintiff had no time after he had settled the attachment suit to see about the shipment, as the train was about leaving when the plaintiff returned to the depot. But whether the contract was or was not made as claimed by the plaintiff was a question of fact for the jury. If the jury believed the plaintiff and his witnesses, they very properly found a verdict in his favor. Under these circumstances, the court was not in error in refusing to direct the verdict in favor of the defendant.

Under the plaintiff's claim,—and we must regard that claim as settled by the verdict of the jury,—the goods were properly marked for shipment, placed inside the defendant's freight depot for immediate shipment, with the agreement on the part of defendant's agents that they would be shipped on the following morning. They were only held till then for the accommodation of the defendant, because it had no car by which to ship on the day of delivery. It is well settled that under such circumstances the company was liable as a common carrier, as the liability as a carrier commences at the time of the delivery of the goods for immediate transportation. 5 Am. & Eng.

Enc. Law (2d Ed.), 180, and cases there cited in note. The exclusive possession was in the defendant. The plaintiff had deposited the goods in the freight depot, with the agreement that they should be shipped. It was not necessary to have a shipping bill or a contract in writing to make the liability of the defendant complete. *Detroit, etc., R. Co.* v. *Adams*, 15 Mich. 458; *Cleveland, etc., R. Co.* v. *Perkins*, 17 Mich. 296.

But counsel for defendant contend that testimony was introduced on its part, which was uncontradicted, that the general custom of the defendant at Ontonagon was and had long been for shippers to mark goods intended for shipment; that it was the custom and duty of shippers to make out a shipping bill, giving a description of the property, the number of packages, and the name of the consignee; that no property was ever received for shipment, or receipted for, except upon compliance with these conditions; that the rules of the company, which were introduced in evidence, required this; that plaintiff did not claim he was not familiar with this custom; that he conceded that he had made out no shipping bill; and that he had previously shipped goods, and had marked them. The court admitted this testimony as bearing upon the question whether the goods were marked or not, and no exception was taken to this ruling. The defendant certainly has no reason to complain of this ruling. The plaintiff was claiming under an express contract of shipment. The custom which defendant was permitted to show could not change this contract. *Lamb* v. *Henderson*, 63 Mich. 302.

Exception is also taken to certain portions of the charge. We have examined those matters, and find nothing therein which calls for discussion; nor do we think it important to discuss the questions relative to the rulings of the court upon the admission and rejection of certain evidence.

A motion for new trial was made and overruled. Exception is taken to that ruling upon various grounds.

The only one we need discuss is that there was no sufficient evidence to support a verdict for $2,500. We have examined this testimony with some care. One of the witnesses called by the plaintiff testified that the value of the stock was $4,000. The plaintiff himself placed it much higher. Other witnesses stated that he had a large stock. The defendant's witnesses, upon estimates made, placed the value at from $350 to $500. The testimony as to value is very conflicting, and we are not prepared to say that the jury placed too high a value upon it. Plaintiff described the different goods in the store, giving them in detail, with values. The court below saw the witnesses, heard the testimony, and, upon a full consideration of the motion for new trial, denied it. We find nothing in the case which should disturb this finding.

The judgment must be affirmed.

The other Justices concurred.