STAPLETON *v.* GRAND TRUNK RAILWAY CO.

1. CARRIERS OF GOODS—LIABILITY—REMOVAL BY CONSIGNEE.
    Where a consignee of goods shipped by rail receipted for them on their arrival at their destination, removed a part of them, and himself placed the remainder in one of the railroad company's buildings, although he could have removed them also, the railroad company was not liable for the goods on their destruction by fire, without its fault, on the afternoon of the following day.

2. SAME—DELIVERY TO CARRIER.
    When a consignor of goods delivers them to the railroad company, relinquishing all control over them, the company becomes immediately liable as a common carrier; but if the goods are merely placed in the company's depot for the consignor's convenience, and are not ready for shipment until he has done something further to them, the company is not so liable.

Error to Wayne; Donovan, J.   Submitted February 3, 1903.   (Docket No. 63.)   Decided May 12, 1903.

*Assumpsit* by William J. Stapleton against the Grand Trunk Railway Company for the value of goods destroyed by fire in defendant's freighthouse.   From a judgment for plaintiff, defendant brings error.   Reversed.

*E. W. Meddaugh* (*L. C. Stanley,* of counsel), for appellant.

*Warner & Codd,* for appellee.

MOORE, J.   This is an action to recover for the value of goods destroyed in a fire which burned the freighthouse of the defendant at Mt. Clemens, on Monday, the 30th day of April, 1900, at 3 o'clock in the afternoon.   The plaintiff is the surviving partner of George Norris & Co., of Detroit, manufacturers and dealers in bottled drinks. This concern had been doing business in Mt. Clemens for

some 20 years, and in the course of business, on the 27th day of April, 1900, had shipped a quantity of goods to their agent, Patrick Bogue, at Mt. Clemens. A part of these goods reached there on Friday, April 27th, and a part on Saturday, April 28th. Immediately thereafter the plaintiff's agent receipted for the goods, and took some of them away. The rest he put into what was called the "jail," where he had previously put goods by the permission of his son, who was in the employ of the defendant company. He took one load away Friday, a load on Saturday, and two more on Monday. A fire occurred at 3 o'clock Monday afternoon, and goods to the value of $144.92, as testified by plaintiff, were destroyed. There were also destroyed in this fire a number of empty bottles and cases belonging to the plaintiff, which the plaintiff claimed were of the value of $379.35. The jury rendered a verdict in favor of the plaintiff for both lots of goods. The case is brought here by writ of error. There is no claim the fire was due to the negligence of the defendant.

In relation to the goods shipped from Detroit, the trial judge charged the jury, in part, as follows:

" The consignee ( that is, the receiver ) has a reasonable time after the arrival of goods at their destination to remove the same. Pending their removal within such reasonable time, the liability of the railroad company is that of a common carrier, and not of a warehouseman. This reasonable time is to be judged by all the circumstances connected with the transaction,—former dealings between the parties, and the ability of the consignee to remove these goods; and, if the jury find that the consignee used all reasonable diligence in removing the goods, the defendant is liable in this case, as a common carrier, for the value of the goods sent out, and your verdict should be for the plaintiff. That depends upon the testimony,—which side you believe."

We think this an incorrect statement of the law. In Hutch. Carr. (2d Ed.) p. 440 ( § 374), it is said:

"In New York the law upon this subject is stated to be that, if the consignee is present upon the arrival of the

goods, he must take them without unreasonable delay; if
he is not present, but lives at or in the immediate vicinity
of the place of delivery, the carrier must notify him of the
arrival of the goods, and then he must have a reasonable
time to remove them; if he is absent, unknown, or cannot
be found, the carrier may store them; and if, after notice
of the arrival of the goods, the consignee has had a rea-
sonable opportunity to remove them, and does not, he can-
not hold the carrier longer as an insurer.    This view of
the subject has also been taken by the courts of Minnesota
and Michigan."

See cases cited in note.

In the same authority, at page 445 (§§ 376, 377), it is
said:

"What length of time will be considered reasonable for
the removal of the goods, at the expiration of which the
carrier will be regarded as holding them as warehouse-
man, when such reasonable time is allowed the consignee,
it is said, cannot be determined by any fixed or definite
rule, but must depend in a great measure upon the cir-
cumstances of each case.    When the facts are agreed
upon or undisputed, it becomes a question to be deter-
mined by the court as one of law, but, where they are dis-
puted and unsettled, the question must be submitted to a
jury.

"It is said, however, that no indulgence will be given
to the consignee by reason of the circumstances of his con-
dition or situation, which may make delay in the removal
of the goods unavoidable on his part; nor will the distance
at which he may reside or have his place of business from
the place of their deposit be taken into consideration, but
he will be required to remove them with the same expedi-
tion as though he lived in the vicinity of the warehouse.
In other words, the time within which the consignee is
required to remove the goods will not be made to vary
with his distance, convenience, or necessities, but only such
time will be allowed as would enable him, if living in the
vicinity of the place of delivery, to remove them in the
ordinary course and in the usual hours of business.    He
must, moreover, proceed to remove the goods with dili-
gence after he is informed of their arrival, and must pro-
vide himself with ample means for doing so.    In *Hedges
v. Railroad Co.*, 49 N. Y. 223, goods arrived for the
plaintiffs early in the morning.    They received notice of

the fact an hour or two later on the same day, and gave directions to their carman to go for and bring them from the depot.   The carman brought away one load, but during the balance of the day carted for the plaintiffs to other places or remained idle.   No other directions were given, and no further effort was made to remove the goods.   During the following night the goods were burned without the fault of the defendant.   It was held that the loss must be borne by the plaintiffs, the defendant's relation to the goods having become changed before they were burned by the delay of the plaintiffs in removing them.

" 'The plaintiffs seek to hold the defendant,' say the court, 'to a strict liability as insurer of the goods.   Asking that so rigid a rule be applied to the defendant, it is just that the plaintiffs in turn be held to prompt and diligent action.   A consignee cannot, after he has notice of the arrival for him of property, defer taking it away while he attends to his other affairs.   He may not thus prolong the time during which the carrier shall remain liable as an insurer. That would be to make the carrier a mere convenience for the consignee, without consideration of any kind to the carrier, and yet resting under a great risk.   So much time as the consignee, after notice, gives to his other business, to the neglect of taking charge of his property and removing it from the custody of the carrier, cannot be allowed to him in estimating what is a reasonable time for him in which, after notice of arrival, to take delivery of his goods.   He is not to be compelled to leave all other business to take his goods from the hands of the carrier; he may attend first to whatsoever demand of his business he deems the most urgent or the most profitable; but he cannot do this at the hazard and expense of the carrier.   It is the duty of the carrier to give notice of arrival. It is the duty of the consignee, at once and with diligence, to act upon this notice, and to seek delivery, and to continue until delivery is complete.   Either may neglect this, his duty, but then the consequence of the neglect must be borne by him.' "

This was not a large consignment of goods.   Part of them arrived on Friday, and part on Saturday.   The agent of plaintiff seems to have preferred to leave the goods where he did until it suited his convenience to remove them, instead of acting promptly.   He had receipted for them, and himself placed them under lock and key.   He had an abundance of time to remove them, but did not do so.   Under the proofs, the circuit judge should have directed a verdict, as to these goods, in favor of

defendant.    See *Hasse* v. *Express Co.*, 94 Mich. 133 (53
N. W. 918, 34 Am. St. Rep. 328); *Moses* v. *Railroad*, 32
N. H., at page 541 (64 Am. Dec. 381).

The other branch of the case is more difficult.    Mr.
Bogue was in the habit of gathering up empty bottles
from plaintiff's customers, and sending them back to
Detroit in shipping cases.    The bottles and cases in con-
troversy had been deposited by him on one of the outside
platforms of the freighthouse, preparatory to their ship-
ment to Detroit.    It was the claim of plaintiff that these
goods were ready for shipment, and that the agent of
defendant had been notified to ship them as soon as the
company was ready.    It was the claim of defendant that
plaintiff was in the habit of bringing the bottles and cases
to the platform and sorting them there, sometimes leaving
them there for days, until he got them ready for shipment,
and that when they were ready he notified the agent, and
a bill of lading was made out for them; but that, upon
this occasion, defendant had no notice the goods were
ready for shipment, and that they were not in its posses-
sion as a common carrier.    This raised a question of fact
for the jury, under proper instructions.    In Hutch. Carr.
(2d Ed.) § 94, it is said:

"The entire responsibility for the safety of the goods
being shifted from the owner to the common carrier as
soon as the delivery is made, it frequently becomes a ques-
tion of the greatest importance and of great nicety to
determine at what instant of time such delivery becomes
complete; for, as we have seen, until the entire and exclu-
sive custody of them has been given to the carrier, no
responsibility rests upon him in that character.    The most
that can be said generally upon this subject is that, a ten-
der of the goods being made to the carrier, his liability for
their safety as carrier arises *eo instanti* with his accep-
tance of them.    *   *   *   To effect a delivery to the carrier,
there must be, either actually or in legal effect, a complete
surrender to him of possession and custody, and, as a con-
sequence, all control over the goods must be abandoned
by the owner until the purpose of the bailment has been
accomplished; and, until this has been done, it cannot be

said that the carrier has assumed any responsibility for them as carrier."

See, also, Id. § 96; *Meloche* v. *Railway Co.*, 116 Mich. 69 (74 N. W. 301).

If in this case Mr. Bogue had done all he intended to do to the goods before the goods were shipped, and had notified the agent of the defendant they were ready for immediate shipment, and the agent agreed to forward them, that would be sufficient to make the company liable as a common carrier. 5 Am. & Eng. Enc. Law (2d Ed.), 180. If this had not been done, it would not have been so liable.

Judgment is reversed, and a new trial ordered.

The other Justices concurred.