CITIZENS STATE BANK OF PERRY, Appellee v. ELIZABETH
    CHAMBERS, ALEXANDER CHAMBERS, · JAMES WIMMER,
    Appellants.

**Mortgage loans:** CONSTRUCTION OF APPLICATION FOR: INTEREST:
1  COMMISSION. Defendants' grantors made a written application
   to plaintiffs for a loan at " five and one per cent per annum "
   and executed a note and mortgage for the principal sum at
   five per cent and a second note, payable in installments, and
   mortgage equal to one per cent of the principal for the full
   term of the loan. Plaintiffs sold the principal note which was
   paid prior to maturity under an optional payment clause, but
   retained the second note as their commission. In a suit to
   enforce the second note the term " five and one per'cent per
   annum " is held to relate wholly to the rate of interest and
   not to commissions, and that payment of the principal note
   before maturity with a sum equal to six per cent interest dis-
   charged the second note.

**Construction of writing:** PAROL EVIDENCE. Extrinsic evidence will
2  not be received to aid the construction of a writing which by
   its terms is not ambiguous, incomplete or susceptible of more
   than one construction.

**Trade usage:** NOTICE: EVIDENCE. A trade usage or custom by
3  which words are given an unusual meaning in a particular
   business generally, or in the locality in which the parties re-
   side, must be shown to be of such definite character and
   general acceptance that knowledge thereof may be imputed
   to both parties.

*Appeal from Dallas District Court.*— HON. J. D. GAMBLE,
                    Judge.

WEDNESDAY, JANUARY 17, 1906.

ACTION in equity to foreclose mortgage. Decree for
plaintiff, and defendants appeal.— *Reversed.*

*Shortley & Harpel,* for appellants.

*Cardell & Fahey,* for appellee.

WEAVER, J.— On or about January 23, 1902, Elizabeth Chambers and husband, Alexander Chambers, being the own-

1. MORTGAGE LOANS: construction of application for: interest: commission.

ers of a farm in Greene county, Iowa, executed and delivered to Dillenbeck & Son an application for a loan thereon in the following words:

### Exhibit A.   Application for Loan.

I, the undersigned, do hereby appoint S. S. Dillenbeck & Son, of Citizens' State Bank, Perry, Iowa, as my agents to procure for me a loan of $5,000.00 for the term of ten years, from February 1, 1902, at five and one per cent. per annum from 1–22–1902, to be paid semiannually, secured by first mortgage upon the following described real estate, situated in the county of Greene and State of Iowa, to-wit: The northwest quarter of section number thirty-five (35) and the north half of the southwest quarter of Sec. 35, Twp. 82, range 29, except eight acres off of side of said eighty-acre tract. For the purpose of procuring said loan, I declare the following statement to be true: Total No. of acres, two hundred and thirty-two. Acres cultivated, one hundred and thirty-two. The said property is not rented, but is occupied by myself. Are there any mortgages, judgments, taxes, or other liens against the property? Yes. If so, describe them, giving amount, name of mortgagee, and when due. Loan of $1,600 at five per cent., two years' interest due, to G. L. Peck, opt. 5–3–1902. $2,000.00 to C. W. Williams, opt. 2–1–1902, to Elisha Nichols. The money is borrowed for the purpose of paying above mortgages and purchase price. I own other property of the value of $4,000. My total liabilities at this time do not exceed the sum of $1,650. If this application is accepted, I will furnish, at my own expense, a complete abstract of title to the land proposed as security, and pay for stamping and recording the mortgage. I also agree to furnish the mortgagee each year, during the continuance of said loan, with evidence that all taxes against said property have been paid. I am a married woman and am seventy-four years old. My husband's name in full

is Alexander Chambers. He is ———— years old. My post-office address is Angus, Iowa. I have appointed S. S. Dillenbeck & Son my agent to assist me in obtaining said loan, to whom the money and papers may be sent, at my risk. Options in even hundreds, at five per cent. interest period. And I further agree to pay ten dollars for examining the permises herein referred to and the title thereto if the security should not be as represented.

Elizabeth (X) Chambers.<br>
Mack Stevens.

The firm of Dillenbeck & Son is composed of S. S. Dillenbeck and B. C. Dillenbeck, who are, respectively, president and cashier of the plaintiff bank, and carry on their loan business in the bank. Thereafter Mrs. Chambers and her husband made and executed to Dillenbeck & Son the following written instruments:

(1) A promissory note of $5,000, payable to the order of S. S. Dillenbeck & Son, due 10 years after date, with interest at 5 per cent., payable semiannually. The note also contained a clause by which the makers had the privilege of making payments on the principal at any interest period.

(2) A mortgage to S. S. Dillenbeck & Son to secure the payment of said promissory note of $5,000.

(3) A promissory note of $500, payable to S. S. Dillenbeck & Son in installments, and is in the following words:

$500.00          Perry, Iowa, January 23, 1902.

For value received, we, Elizabeth Chambers and Alexander Chambers, wife and husband, promise to pay to S. S. Dillenbeck & Son, or order, five hundred dollars, payable in twenty equal installments of twenty-five dollars each. The first installment of twenty-five ($25) will become due and payable on the first day of August, 1902, and the second installment of twenty-five ($25) will become due and payable on the first day of February, 1903, and the balance to be paid in eighteen (18) equal installments of twenty-five ($25) each, on the first day of each succeeding month of August and February, thereafter, until the aforesaid sum of

five hundred dollars is paid in full, with interest at the rate of eight per cent. per annum payable semiannually from maturity until paid.   Unpaid interest shall bear interest at the rate of eight per cent. per annum from the time the same becomes due.   And it is further agreed that if default is made in the payment of principal or interest, then the whole shall become due and payable at once.   In case suit is commenced for the collection of this note, the makers hereof agree to pay all reasonable costs, including attorney's fees.

Elizabeth (X) Chambers.

Alexander (X) Chambers.

Witness to marks:   Mack Stevens.

(4)   A mortgage to S. S. Dillenbeck & Son to secure the payment of said note for $500; said security being made subject to the lien of the mortgage first-above mentioned.

These notes and mortgages immediately, or at least very soon after the application, were signed and the amount of the loan was at once furnished by Dillenbeck & Son on their own account and paid out for the benefit of the borrowers in satisfying and removing certain prior liens and charges upon the land.   The Dillenbecks, according to their testimony, held the principal note and mortgage some three or four months, when they sold and assigned it to a party in Connecticut, retaining the note for $500 secured by second mortgage.   The negotiations for the sale of said mortgage were not concluded until within about three weeks of the first interest day, August 1, 1902, when the purchaser paid Dillenbeck & Son the amount of the principal note, with interest accrued to that date at 5 per cent.   Within a month or two after obtaining the loan from the Dillenbecks the Chambers sold the land to the defendant James Wimmer, who assumed payment of the debt.   On the arrival of the first interest day Wimmer claimed the right to exercise the option reserved in the principal note to pay the entire debt. He paid, and the bank on part of the owner accepted, the full amount of $5,000, with five per cent. interest thereon, and the note and mortgage were surrendered and canceled.

He also paid the first installment of $25 on the $500 note which had been retained by Dillenbeck & Son, but the holder refused to surrender or cancel the note, claiming that it represented merely the commission for making the loan and that the indebtedness thus evidenced was in no manner affected or avoided by the payment of. the principal before the expiration of the full loan period. · The note having been transferred by Dillenbeck & Son to the bank and default having been made in payment of the second installment, this suit is brought to recover thereon and for a foreclosure of the mortgage.   This somewhat extended statement of conceded facts indicates the nature of the controversy before us without any formal statement of the pleadings filed.   The question presented may be briefly stated as follows:   Under the contract between the Chambers and the Dillenbecks, is the $500 note to be treated as representing a commission fully earned when the loan was completed, or does its several semi-annual installments represent interest accruing upon the principal note ?   If commission, and the same has been earned according to the terms of the contract, then, of course, the plaintiff is entitled to recover and the conclusion of the trial court is right, but if interest, then there should be no recovery, and the decree appealed from must be reversed.

To ascertain the contract between the parties, we must look first to the writing.   Recurring to its language it unquestionably appears that Mrs. Chambers and her husband authorized Dillenbeck & Son to procure for them a loan upon certain specified terms, to wit, " a loan of $5,000 for the term of ten years from February 1, 1902, at five and one per cent. per annum from 1–22–1902, to be paid semi-annually secured by first mortgage upon [describing the land]. . . . Options in even hundreds at five per cent. interest period."

If we look to the writing alone, and such is the elementary general rule in the absence of allegations or proof of fraud, we think it impossible to discover, in the language

there employed, any agreement to pay a commission. It is possible that, if the borrowers were people of considerable business experience and observation, the expression "five and one per cent." would have justified the inference on their part that Dillenbeck & Son intended to dispose of the loan upon the market at 5 per cent. interest and retain 1 per cent. as their profit in the transaction, but the writing certainly contains no agreement to that effect. Moreover, there is a very material distinction existing between "profit" and "commission." In the phrase "a loan of $5,000 for ten years at five and one per cent. per annum," the words "five" and "one" stand grammatically and logically in precisely the same relation to the word "loan," which precedes them, and to the words "per cent. per annum," which follow them. If "five" refers to the rate of interest to the lender, upon what authority or by what process of reasoning can we say that "one," standing in like relation to the antecedent and subsequent words of the sentence, refers to commission to the agents? If "one" is to be construed as meaning "one per cent. commission," what license have we to say that "five," to which it is coupled in the same manner, means "five per cent. interest?" Stated in another form, if we assume to say that one numeral means interest and the other means commission, how are we able to say that "one," rather than "five," stands for commission?

In order to extract from the writing the meaning placed upon it by appellee, resort must be had to extrinsic evidence. It may be conceded that where the language of a contract is so ambiguous or incomplete as to convey no clear idea of its meaning, or is fairly susceptible of two or more constructions, parol evidence is admissible in explanation; but even in such cases the rule which excludes parol testimony of prior or contemporaneous oral agreements tending to vary or contradict the writing still prevails. The facts and circumstances existing at the time the writing was executed and the conduct of the parties

2. CONSTRUCTION OF WRITING: parol evidence.

both before and after its execution may properly be scrutinized for the purpose of removing any ambiguity or uncertainty of expression, but the instrument is not to be changed or contradicted under the guise of explanation of construction.    17 Cyc. 666, 667, note 34.    Neither is evidence admissible of the unexpressed intention which one or both of the parties may have entertained, but failed to have embodied in the writing.    *King v. Merriman,* 38 Minn. 47 (35 N. W. 570) ; *Bank v. Brigham,* 61 Kan. 727 (60 Pac. 754).

On the trial in the court below the Dillenbecks were permitted to testify that the application in question was drawn according to their usual method of business.    One Whinery, a banker in Des Moines, testifying for plaintiff, said: " There is a custom between the borrower and the lender of expressing interest and commission.    We generally state the rate, then the commission, also, in the same application."    And on the strength of this showing he was allowed to say he would understand the language in the contract in suit to mean " five per cent. interest and one per. cent. commission."    Another witness, a banker in Adel, was also permitted to testify in substantially the same terms.    It would hardly seem necessary to enter into any argument to demonstrate the insufficiency of this very vague showing to establish a custom which shall control the construction of a written contract.    In the first place, no custom is pleaded except the customary method of the Dillenbecks in making loans, *Eller v. Loomis,* 106 Iowa, 276, and of any private custom by which the words " five and one per cent." were used in any particular or restricted sense there is no showing that the Chambers had knowledge or notice.    They had negotiated another loan through the same agency, but in that transaction the agents had taken a written agreement in which it was expressly stated that they were to receive a specified sum as commission for their services.    The term " custom " is perhaps not quite accurate as used in the record, and the claim of plaintiff in this

3. TRADE USAGE: notice: evidence.

respect may possibly be better referred to the law governing
" trade usages." But a trade usage by which words are
given an unusual or arbitrary significance in a particular line
of business generally or in the locality where the parties
reside must be shown to be of such definite character and
such general acceptance that knowledge thereof by both par-
ties may be reasonably inferred.   *Underwood v. Iowa L. H.,*
66 Iowa, 134; *Bradford v. Ins. Co.,* 54 Iowa, 598; *Murray
v. Brooks,* 41 Iowa 45; *Rindskoff v. Barrett,* 14 Iowa, 101;
*Van Hoesen v. Cameron,* 54 Mich. 609 (20 N. W. 609);
*Irwin v. Williar,* 110 U. S. 499 (4 Sup. Ct. 160, 28 L. Ed.
225); *Beatty v. Gregory,* 17 Iowa, 109; *Johnson v. DePey-
ster,* 50 N. Y. 666; *Brunnell v. Hudson Saw Mill Co.,* 86
Wis. 587 (57 N. W. 364).

But we think there is no occasion in this case to resort
to proof of custom or usage to determine with certainty the
real nature and effect of the transaction between the appel-
lants and Dillenbeck & Son.   Conceding, for the purposes of
the case, that the testimony was all properly admitted and
giving it its utmost probative effect, we are still of the opin-
ion that in view of the undisputed facts the appellee is not
entitled to recover.

Looking at the practical construction placed by the
parties upon the contract, we find that, instead of negotiating
a loan from some third party for the borrowers, the Dillen-
becks themselves made the loan from their own funds at " five
and one per cent.," taking their chances of marketing the
paper on a basis which would leave them a margin of profit.
This fact shows quite conclusively that the " five and one
per cent." was understood by the parties as only another
way of saying " six per cent. interest," (the division into
" five and one " being made to facilitate the marketing of
the security by the lenders), for there could be no such
thing as commission to the lenders for making a loan of
their own money.   This feature of the case will be empha-
sized by considering what would have been the rights of the

parties had the Dillenbecks never sold the principal note and mortgage, and when the first interest day arrived Chambers or his grantee Wimmer had appeared and exercised his option to pay off the debt.   Under such circumstances could Dillenbeck & Son have rightfully demanded not only the " five and one per cent." accrued to that date, but, in addition thereto, the equivalent of 1 per cent. per annum on the entire debt for nine and one half years in the future after the debt itself had been fully discharged ?   There is absolutely nothing in the contract on which to base such an extraordinary ruling, yet we must so hold in order to sustain the conclusion of the trial court.

It follows from what we have said the decree appealed from must be, and is, *reversed.*