## HANNA v. SMITH.

1. CUSTOMS AND USAGES—CONTRACTS—EVIDENCE—OIL WELLS.
   Evidence that it was customary in driving oil wells to include an extra charge for "rimming out" or enlarging the bore in order to admit the casing, was incompetent in an action for labor and materials furnished in driving a well under a written contract, containing complete terms and providing for a charge of five cents a foot for removing the casing under certain contingencies.

2. SAME—WRITTEN INSTRUMENTS—PAROL EVIDENCE.
   A written contract cannot be varied or contradicted by proof of usage, although evidence is admissible, in the absence of express stipulations, where the meaning of the contract is equivocal, to explain the terms used.[1]

3. SAME—WELLS—CONTRACTS.
   Provisions that the methods employed in casing the well should be such as are usually employed in similar drilling

[1] On the admissibility of evidence of custom to create an exception to written contract, see note in 3 L. R. A. (N. S.) 248.

and casing of oil and gas wells in oil territory, had no reference to the price, but referred merely to the methods of work; and no dispute having arisen relative to the manner of driving and casing the well, the clause did not warrant admission of evidence as to custom.

4. SAME—TRIAL.
   Under undisputed evidence that an elevator, used in boring the well, was part of the necessary apparatus which plaintiff, the contractor, agreed by the written contract to supply, defendant was entitled to a direction in his favor that plaintiff could not recover extra compensation for furnishing the equipment.

5. SAME—RECOUPMENT.
   And the defendant was entitled to recoup for the cost of procuring hydraulic jacks to raise the casing, which the contract provided should be withdrawn when necessary, plaintiff to receive five cents a foot for the work.

Error to Eaton; Smith, J. Submitted January 26, 1912. (Docket No. 84.) Decided January 3, 1913.

Assumpsit by Charles Hanna against Alexander H. Smith for materials and labor furnished in boring an oil well. Judgment for plaintiff. Defendant brings error. Reversed.

*Joseph B. Hendee* and *David B. Love*, for appellant.

*G. Elmer McArthur* and *Franklin Kranks*, for appellee.

McALVAY, J. Plaintiff brought suit in assumpsit against defendant to recover an amount claimed to be due him under a certain contract entered into between the parties for putting down a test well for oil, gas, copper, coal, or cement in Hamlin township, Eaton county. He recovered a judgment in the sum of $1,295.92. The case is here for review by writ of error.

The contract out of which the dispute in this case arises is as follows:

"A contract made and entered into at the city of Eaton Rapids, Mich., this 15th day of July, A. D.

1910, by and between Alexander H. Smith, party of the first part, and Charles Hanna, of Bloomdale, O., party of the second part, witnesseth: That, whereas, the party of the first part proposes to undertake the boring of a well for oil, gas, copper, coal, or cement, upon property for which said first party holds a lease, the exact location of said well to be in the township of Hamlin, county of Eaton, State of Michigan. And whereas, the party of the second part desires to enter into a contract with party of the first part, for the purpose of boring a well for oil, gas, copper, coal, or cement, and also for completing said bore to a depth of 2,000 feet, for said first party: Now, therefore, it is agreed by and between the parties hereto as follows:

"(1) The party of the second part agrees to furnish all tools, engine, boiler, cables, sand line, reel, and wheel, tubing line or any other equipment necessary for making a test bore for any of the minerals herein specified.

"(2) In consideration of the covenants and agreement on the part of the first party to be done and performed as hereinafter expressed, the party of the second part agrees to bore to a depth of 2,000 feet for fifty (50) cents per lineal foot.

"(3) The first party agrees to furnish all material, including coal, to be delivered to the boiler at his own expense, the amount necessary to make a test bore to a depth of 2,000 feet, but shall in no wise be responsible for the loss of any tools belonging to second party, in making this bore.

"(4) First party retains the right to stop the operations at any depth where a paying proposition is found.

"(5) First party further agrees to pay all freight charges on tools and equipment in and out, also all team work in and out.

"(6) Payment for labor on this contract shall be made weekly, as follows: two drillers, four dollars ($4.00) each per day, and board; two tool dressers, three dollars ($3.00) each per day, and board, all to be paid by first party, but said first party shall in no case be held for board or wages in case of sickness or other cause, for being off duty during the time this bore is being executed.

"(7) The size of bore of said well at surface of ground shall not be less than ten (10) inches in diameter, and said bore shall be continued down from the surface of the ground at a diameter of ten (10) inches until solid rock is reached, and drive pipe put onto said rock, and the meth-

ods employed in casing said well shall be such as are usually employed in similar drillings, and casings of oil and gas wells in oil and gas territory, in order to get the very best results, either from the find of oil or gas.

"(8) The party of the first part will not be held liable for any money to said second party, until the completion of this contract, but will pay expenses as herein stated.

"(9) A failure of second party, for any reason whatsoever, to complete this contract, then all rights of said second party herein are extinguished, and this agreement shall become null and void.

"(10) And it is further agreed that if it becomes necessary to draw the casing from said well, that the party of the first part shall pay to second party, the sum of five (5) cents per foot for each and every foot of casing so drawn out of the well by him.

"In witness whereof, the party of the first part and the party of the second part have hereunto signed this duplicate agreement, the day and year first above written.

                                "ALEXANDER H. SMITH.
                                "CHAS. HANNA."

Under this contract plaintiff proceeded to, and claims that he did, put down the test well provided for according to its terms to a depth of 2,000 feet.

The principal contention in the case relates to the admission of testimony by the court, over the objections of counsel for defendant, relative to certain customs and usages alleged to prevail in oil fields, under which evidence was introduced for the purpose of proving items charged by plaintiff, and claimed recoverable under said contract, and upon which recovery was had. This involves a construction by this court of the terms of the contract which is the basis of this suit.

Objection was first made on the direct examination of plaintiff, relative to items in his bill of particulars amounting to $130, charged for rimming out 260 feet of the well hole, part of which was 10 inches and part 8 inches in diameter; it being contended by the defendant that by the express terms of the contract such testimony was inadmissible. Wells of the character of the one put down under this contract require the use of a considerable equip-

ment of tools and machinery, all of which, under this contract, by specific agreement, the plaintiff was to furnish. The casing mentioned in the contract is a heavy metal pipe of required sizes, driven down the hole to such depth as may be necessary. The purpose of casing a well of this kind is to prevent sand, gravel, water, or other undesirable subtances from filling up or running into the well as the work of drilling progresses. A drill and many other tools and appliances are required for the purpose of sinking such a well. The drill is a heavy steel bar, like a giant cold-chisel, which is screwed into a socket at the lower end of a heavy iron bar of 20 feet or more in length, the whole of which is attached to a heavy cable rope and is of great weight. A derrick is built over the well, extending above the wellhouse, in the top of which is a pulley. The drilling cable goes up over this pulley, and is brought down and attached to the end of a walking beam, operated by an engine, which furnishes the power for operating the drill in the well hole by lifting and dropping it as it drills.

In sinking a well, when it becomes necessary to drive down casing, the drill is removed, and the hole enlarged by what is called "rimming" out to the size required. The casing is heavy tubing which is of the size required, and is made in lengths of about 20 feet, is then lifted, length by length, and driven into the well. A cap is screwed upon the top of the piece being driven to protect the end from becoming battered. This cap is taken off as each length is driven, and the next length is screwed to the one already in the hole. This is repeated, length by length, until sufficient casing has been driven. The drill is then put to work again and the drilling continues. If it appears that further casing is required, the drill is removed, and the casing is driven down from time to time as the necessities of each case may require.

Consideration must now be given to the terms of this contract under which the parties to this suit are operating. The contract recites that this well was a test well, which

defendant desired to have bored, for oil, gas, copper, coal, or cement, and plaintiff desired to enter into contract with him for the purpose of boring and completing such well to the depth of 2,000 feet, and by the terms of the contract plaintiff (who is described as the party of the second part) agreed as follows:

"(1) Party of the second part agrees to furnish all tools, engine, boiler, cables, sand line, reel and wheel, tubing line, or any other equipment necessary for making a test bore for any of the minerals herein specified.

"(2) In consideration of the covenants and agreements on the part of the first party (defendant) to be done and performed as hereinafter expressed, the party of the second part agrees to bore to the depth of 2,000 feet for fifty (50) cents per lineal foot."

Plaintiff further agreed that the size of the bore of the well was to be not less than 10 inches from the surface of the ground until solid rock was reached and the drive pipe (casing) put into the solid rock—

"And the methods employed in casing said well shall be such as are usually employed in similar drillings and casings of oil and gas wells in oil and gas territory, in order to get the very best results either from the find of oil or gas."

Defendant agreed, on his part, to furnish all materials, including coal, to be delivered at the boiler at his own expense to an amount necessary to make the test bore to the depth of 2,000 feet, but not to be responsible for the loss of any tools belonging to plaintiff, and also to pay all freight charges on tools and equipment in and out and all team work hauling in and out. He agreed to pay for labor on this contract weekly, two drillers at $4 each per day and board, two tool dressers at $3 each per day and board, but in no case to pay board and wages while the workmen were off duty on account of sickness or other cause; and he further agreed, if it became necessary to draw the casing from the well, to pay plaintiff the sum of five cents per foot for each and every foot of casing so drawn out of the well by him.

The major portion of the briefs for both parties is taken up with the discussion of the principal contention in the case referred to and upon which the greater portion of claimed errors relied upon is assigned. On the part of defendant it is urged that the obligations resting upon each of the parties to the suit under this contract are therein set forth clearly and concisely, and without ambiguity. The first matter of this contention over which dispute arose was relative to "rimming out" the well. The agreement of the plaintiff, as determined by the contract, was to bore and complete the well to the depth of 2,000 feet for the sum of 50 cents per lineal foot. The casing which was to be used in the well was to be furnished by the defendant. In this respect it does not appear to us that there was any ambiguity in the terms of this contract, or that it requires any extraneous proof of any usage or custom as to what was intended by the parties to the contract. In drilling and completing this well to the depth of 2,000 feet, by the terms of the contract, it was contemplated that casing would be required, and it is evident that, without casing, this well could not have been put in to that depth. The record is full of evidence uncontradicted to that effect.

The record shows that "rimming out" or enlarging the bore was necessary in order to make it large enough to receive the casing, which is driven down, as already explained, and this must necessarily have been within the contemplation of the parties when this contract was entered into, which provided that the casing should be driven down to solid rock, and fixed the price per lineal foot plaintiff was to receive for completing this test well to the depth of 2,000 feet. To drill this well to that depth without casing would have been an impossibility. No charge has been made or claimed for work done in driving the casing into this well, but provision is made in the contract that, in case it became necessary to draw the casing from the well, defendant was required to pay plaintiff five cents per foot for such work. It is evident, therefore,

that the matter of putting in and taking out this casing was passed upon and agreed to between the parties, and that all work necessary in putting in the casing was included in the price per foot agreed upon to be paid to plaintiff for putting down this well. The court was therefore in error in allowing evidence to be introduced as to usage and custom alleged to prevail in oil fields in respect to the price charged for "rimming." Such evidence is admissible in the absence of express stipulations, and where the meaning of the contract is equivocal, but is never admissible to contradict what is plain and unambiguous. 1 Greenleaf on Evidence, §§ 292, 294. The general rule is that a written contract cannot be varied or contradicted by the proof of usage. This has been announced by the United States Supreme Court in numerous cases, and the decisions of this court are uniform to that effect. *Van Hoeson* v. *Cameron*, 54 Mich. 609, 613, 614 (20 N. W. 609), and cases cited; *Lamb* v. *Henderson*, 63 Mich. 302, 305 (29 N. W. 732), and cases cited.

This disposes of all the errors assigned relative to the admission of evidence in the case showing custom and usage relative to oil wells in oil territory.

It is insisted by plaintiff that this contract was made in contemplation of the existing and known customs and usages in putting down oil wells in oil territory, relying upon the part of paragraph 6, already quoted, which provides that "the methods employed in casing such well shall be such as are usually employed in similar drilling and casing of oil and gas wells in oil territory." This provision relates solely to the methods employed in casing wells, upon which matters there appears to be no controversy in the case. The dispute does not arise over the methods employed in casing, but because of certain charges claimed for "rimming out" the hole in order to put in the casing, which we have already determined were improperly allowed under the terms of the contract.

Error is assigned on account of testimony of plaintiff admitted in the case in support of the item of plain-

tiff's claim for furnishing elevators and the charge of the court thereon, upon the ground that such elevators were part of the equipment necessary to be furnished by the plaintiff in performing his contract. The contract provides that plaintiff shall furnish all the equipment necessary for making the test bore. The plaintiff testified as follows:

" *Q.* I will ask you whether an elevator is any part of the equipment for the drilling of a well?
" *A.* It is. The elevator becomes necessary when they are putting in piping. It holds right under the collar and lowers the joints down."

Other witnesses in the case testified to the same effect. The question was submitted to the jury to be decided as a question of fact. An examination of the record does not show that there was any testimony to warrant the court in so charging. This was part of the necessary equipment required to be furnished by plaintiff under his contract.

On the part of defendant, as a claim of set-off, among other things, was a charge for procuring hydraulic jacks for the use of plaintiff in raising the casing out of the well, an item of $148 actual expense incurred by him. Upon this claim, the court instructed the jury that if they believed there existed a general custom in oil and gas well districts, familiar to the parties to this action, under which the defendant would be required to pay for the use of hydraulic jacks, then this offset should not be allowed. We do not find in the record any evidence to support such a charge, and from the contract it appears that plaintiff was to draw out the casing when necessary and receive five cents per foot for such work. This charge of the court was erroneous. The hydraulic jacks were necessary appliances and equipment to remove this casing, and, under this contract, the charge for the same by defendant was a proper one. The defendant claimed damages by way of recoupment for board of men, for coal, for labor, caused by unnecessary delay of plaintiff in the perform-

ance of the work, and also for expenses for extra casing, including freight and other expenses, caused by the failure of plaintiff to properly case the well, and certain other items of cash claimed to have been expended on his account as set-off. It will be unnecessary and of no benefit to consider these matters, for the reason that upon another trial, which must be had, with the construction which we have given this contract and the determination made upon other questions discussed, they will present no difficulties to the trial court in the course of such trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, BROOKE, STONE and OSTRANDER, JJ., concurred.