FORT PITT MALLEABLE IRON CO. *v.* DETROIT STEEL
PRODUCTS CO.

1. CONTRACTS—CONSTRUED MOST STRICTLY AGAINST MAKER.

Language used in contract is to be construed most strictly
against party responsible for its use, especially where construc-
tion contended for by maker of instrument would result in
binding other party, while performance by him would be op-
tional.

2. CUSTOMS AND USAGES—EVIDENCE.

Proof of existence of custom which would tend to contradict,
not explain, express terms of contract, was properly excluded.

3. SAME—CONTRACTS.

Where order in clear and unambiguous terms ordered 4,000 cast-
ings to be manufactured, 2,000 to be shipped at once, and
balance to be shipped when ordered, testimony as to alleged
custom in trade that balance was not to be manufactured
until further orders were given, effect of which would be
to bind manufacturer but leave purchaser free from liability
for failure to call for balance, was properly excluded.

Appeal from Wayne; Smith (Henry H.), J., pre-
siding. Submitted October 4, 1932. (Docket No. 8,
Calendar No. 36,636.) Decided December 6, 1932.

Assumpsit by Fort Pitt Malleable Iron Company,
a foreign corporation, against Detroit Steel Products
Company, a Michigan corporation, for balance of
purchase price of certain castings. Judgment for
plaintiff. Defendant appeals. Affirmed.

*Douglas, Barbour, Desenberg & Schaeffer* (*Harold
B. Desenberg,* of counsel), for plaintiff.

*Stevenson, Butzel, Eaman & Long* (*Leo W. Kuhn*
and *Richard H. Hecker,* of counsel), for defendant.

Butzel, J.  Fort Pitt Malleable Iron Company of Pittsburgh, plaintiff, received from Detroit Steel Products Company, defendant, two orders for castings designed for use on freight cars.  Both are dated February 16, 1925.  One reads as follows:

> "Purchase Order
> "Detroit Steel Products Company
> "Manufacturers
> "Detroit, Michigan.
> "Order No. B28776
> "(The above number must appear on all invoices and packages)
> "2–16–25.

"To:

"Fort Pittsburgh Malleable Iron Co., "Pittsburgh, Pa.

"Please enter our order and ship via     F.O.B.

| "Quantity | Description of Material Wanted | Price |
| --- | --- | --- |
| "1,000 | J–13 Malleable Iron Castings—<br>Lower Bolster Cap. | .0575 per lb. |
| "1,000 | J–14 Malleable Iron Castings—<br>Top Bolster Cap. | f.o.b. Pittsburgh. |

"Blue prints inclosed.
"For Harvey Bolster Cushion #55
"You to furnish patterns
"Part number must show on castings
"Ship: 500 of each at once.
  "Balance to be specified later.  *   *   *
"All changes to be made in writing.  *   *   *
      "Detroit Steel Products Company,
        "L. T. Miller,
          "Purchasing Agent."

The other is almost identical in form and content except that it bears a different serial number and provides for 1,000 J–15 and 1,000 J–16 malleable iron castings.

Very shortly after receipt of the orders, plaintiff proceeded to manufacture the 4,000 castings called for, and shipped 500 of each kind, or 2,000 in all, and held the other 2,000 awaiting shipping instructions. It notified defendant to this effect, but the latter never gave shipping instructions for the balance of the order. On March 25, 1926, a year later, it wrote plaintiff that:

"You may rest assured that, as soon as possible, we will be glad to take the castings off your hands."

On February 15, 1927, two years later, defendant again wrote plaintiff stating that there was a possibility of using the castings within the next 60 days, also that it felt plaintiff had been at fault in manufacturing the castings in advance of specifications. This is the first indication in the correspondence that shows defendant found fault with the fact that plaintiff had manufactured the unshipped balance of the order in advance of further specific instructions to that effect. On February 9, 1928, almost three years later, defendant asserted that the contract did not mean what the words indicated, and that releases should have been secured prior to the manufacturing of the undelivered castings. In the instant suit, brought to recover the purchase price of these 2,000 castings, the judge who tried the case without a jury properly rendered a judgment for the full amount of plaintiff's claim, less the admitted value of the castings as scrap iron.

Defendant contended, and now insists on appeal, that, owing to a custom in the trade, the words: "Ship: 500 each at once. Balance to be specified later," had a different meaning than the words indicate on their face. While defendant does not dispute the use of the word "ship" in its ordinary sense, it does attempt to contradict the apparent

meaning of the phrase: "Balance to be specified later," by contending that according to the customs and usages of the trade, it referred to the fact that the remainder of the order was not to be manufactured until further directions were given; that an order of this type binds the manufacturer for the entire amount specified in the order, if called for, but leaves the purchaser free from liability for failure to call for a part of the goods ordered, except possibly for the expense of making the patterns.

The order appears to be an unconditional, unambiguous, and certain one to manufacture 4,000 castings and to ship 2,000 at once, the time of the shipment of the balance to be specified later. The placing of the words, "balance to be specified later" immediately below and to the left of the phrase, "Ship: 500 of each at once," is almost conclusive proof of the fact that it referred to shipment rather than manufacture. The entire contract is on a printed form issued by the defendant. It is an elementary principle that the language is to be construed most strictly against the party responsible for its use. *Patterson* v. *Miller,* 249 Mich. 89; *Lower* v. *Muskegon Heights Co-operative Dairy,* 251 Mich. 450. This principle seems to be particularly applicable when the construction contended for by the maker of the document would result in binding the other party, while performance by himself would be optional. *Jewett, Bigelow & Brooks* v. *Detroit Edison Co.* (C. C. A.), 274 Fed. 30.

Defendant attempts to prove the existence of this custom by reference to large contracts made in the automotive and steel industries, where, under similar circumstances, goods to be shipped at once are manufactured, and nothing further is done to make up the balance of the order until releases are executed. Even here there seems to be a great deal of

uncertainty, for there is a conflict in the testimony of defendant's own witnesses as to whether there is any liability, and if so, just what is the measure of damages, for failure to order subsequent releases. The testimony in the instant case does not show a custom that is certain, uniform, invariable, and notorious so as to be binding on plaintiff. *Fogarty v. Railroad Co.,* 180 Mich. 422. Even assuming defendant's contentions are correct as to the steel and automotive industries, the evidence in the instant case fails to satisfy us that such a custom exists in the malleable iron industry as a whole to such an extent that plaintiff was or should have been familiar with it. Defendant's letters fully support plaintiff's claim that the orders meant just exactly what the language indicates. On the present record, proof of the existence of such a custom would tend to contradict, not explain, the express terms of the order. A policy entertaining such evidence would be extremely dangerous and should not be tolerated when the dispute centers about a contract whose language is so clear and unambiguous as the one presented in the instant case. *Chaney v. Lake Drive Garage,* 252 Mich. 412; *Hanna v. Smith,* 173 Mich. 483, 490; *Meloche v. Railway Co.,* 116 Mich. 69; *Burrows & Kenyon, Inc., v. Warren* (C. C. A.), 9 Fed. (2d) 1; *Bushey & Sons v. American Ins. Co.,* 237 N. Y. 24 (142 N. E. 340). Also see *Mowbray, Robinson & Co. v. Rosser,* 126 L. T. 748, where it was held that evidence seeking to attach a different meaning by force of custom to the word "shipment" should be excluded.

The judgment of the lower court is affirmed, with costs to plaintiff.

Clark, C. J., and McDonald, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.