Mrs. M. S. Gregory, Appellant, v. The Wabash Railway Company, Respondent.

Kansas City Court of Appeals, November 9, 1891.

1.  Common Carriers: WHEN LIABILITY ATTACHES: DELIVERY OF GOODS. If goods are delivered to a railroad company for transportation without more, the liability of the carrier attaches, and this means an insurance, a responsibility for every loss, save only such as result from the acts of God or the public enemy; but, if the delivery is for storage for a certain or indefinite time, the carrier becomes a mere depository or bailee until the appointed time has expired.

2.  ——: ——: ——. A delivery to the carrier with the name and address of the consignee marked upon the goods is, in the absence of some directions or agreements otherwise, equivalent to an express direction to transport them to such consignee *at once;* and, on a review of the testimony in this case, it is *held*, there is some evidence tending to prove a delivery for immediate shipment and amply justifying a submission of the case to the jury.

*Appeal from the Chariton Circuit Court.*—Hon. G. D. Burgess, Judge.

REVERSED AND REMANDED.

*Tyson S. Dynes*, for appellant.

(1) The uncontradicted testimony, admitted by the demurrer to be true, is that the goods were delivered

to the carrier, at its depot, boxed and marked for ship-
ment, and, as an incident, prior to the shipment, placed
by the order of the agent of the carrier in its freight-
room. This was delivery to the carrier, and the liability
of common carrier began at the time of such delivery.
*Mason v. Railroad,* 25 Mo. App. 473 ; *Railroad v.
Kirkwood,* 9 Am. & Eng. R. R. Cases, 85 ; *Railroad v.
Smyser,* 38 Ill. 354 ; *Grosvenor v. Railroad,* 39 N. Y.
34. ( 2 ) Deposit of goods in a warehouse as accessory
to the carriage, and for the purpose of being carried,
imposes upon the carrier the liability of a carrier and not
that of a warehouseman. 2 Am. & Eng. Ency. of Law,
804 ; *Blossom v. Griffin,* 3 Kern ( N. Y.) 569 ; *Mason v.
Railroad,* 25 Mo. App. 473. ( 3 ) And it makes no dif-
ference whether any bill or entry in the books of the
company is made. Hutch. Carriers, secs. 97, 99, pp.74,76.
Where carrier agrees to transport, the promise to pay
what the carriage is reasonably worth arises by implica-
tion of law. *Gray v. Packet Co.,* 64 Mo. 47. ( 4 ) If
goods on deposit in carrier's warehouse, awaiting ship-
ment, are destroyed by fire, the carrier is liable to the
same extent as if the goods were in transit, unless that
liability has been modified with the consent of the
owner of the goods shipped. 2 Am. & Eng. Ency. of
Law, p. 804 ; 3 Am. & Eng. R. R. Cases, 256 ; 18 Am. &
Eng. R. R. Cases, 527. ( 5 ) Whether or not the goods
were intended for early shipment was a question for
the jury, and the court should not have given the
instruction in the nature of a demurrer, unless there
was no evidence that the goods were for early shipment.
*Thomas v. Express Co.,* 30 Mo. App. 86 ; *Groll v.
Trower,* 85 Mo. 251. ( 6 ) If the jury could have
reasonably inferred, from the evidence, the essential
fact of delivery to the carrier for shipment, the
demurrer should not have been given. *Zwisler v.
Storts,* 30 Mo. App. 163 ; *Twohey v. Fruin,* 96 Mo. 104;
*Taylor v. Short,* 38 Mo. App. 21. The jury, and not
the court, must pass on any conflict in the testimony.

*Brown v. Railroad*, 99 Mo. 310. (7) The demurrer to the evidence admitted not only the truth of the facts testified to, but every reasonable inference that may be drawn therefrom. *Jackson v. Ins. Co.*, 27 Mo. App. 62 ; *Huckshold v. Railroad*, 90 Mo. 548.

*George S. Grover*, for respondent.

As the evidence fails to show a delivery of the goods sued for to the defendant, for immediate transportation, the defendant was a mere depository, and, therefore, not liable as a carrier. For that reason the ruling of the court below was correct. Hutchinson on Carriers, secs. 63, 88, and cases cited ; Story on Bailments, sec. 537, and cases cited ; *O'Neil v. Railroad*, 60 N. Y. 138, and cases cited ; *Watts v. Railroad*, 106 Mass. 466, and cases cited ; *Busching v. Gaslight Co.*, 73 Mo. 219 ; *Mason v. Railroad*, 25 Mo. App. 473.

GILL, J.—Mrs. Gregory, the plaintiff, while changing her residence, on February 28, 1890, sent to the depot of defendant at Brunswick two wagonloads of household goods, consisting of a piano and some other articles, boxed and marked "Mrs. M. S. Gregory, Gallatin, Missouri." For some reason, not altogether clear, as will be seen by the evidence hereinafter noticed, the piano and other goods were stored in defendant's depot at Brunswick. This was at about three o'clock P. M., Friday, February 28. On Sunday night following the depot and goods were destroyed by fire, and this suit was brought to charge the defendant as a common carrier for the value thereof. On the trial in the circuit court the court sustained a demurrer to plaintiff's evidence, and, a verdict and judgment being rendered for defendants, plaintiff appealed.

The question is then, admitting the truth of plaintiff's evidence, and every reasonable inference which the jury might draw therefrom, was there a showing that warranted a verdict for plaintiff ? The lower court

held in the negative, and the correctness of that ruling is up for decision here.

The law applicable to this kind of case is now well settled, though it is sometimes difficult to adjust it to the facts of all controversies. It is well understood that if goods are delivered to the railroad company for transportation, without more, then the liability of carrier attaches, and this means an insurance, a responsibility for every loss, save only such as result from the acts of God or the public enemy. Hutchinson on Carriers, section 88, thus clearly states the law: "The delivery must be to the carrier or his agent for immediate transportation; for if the goods be delivered to him to be stored by him for a certain time, or until the happening of a certain event, or until something further is done to prepare them for transportation, or until further orders are received from the owner, the carrier becomes a mere depository or bailee until the appointed time has expired," etc. And again the same author says: "But, if the delivery be made at the warehouse or other place of business of the carrier for as early transportation as can be made in the course of the carrier's business, and subject to only such delays as may necessarily occur in awaiting the departure of trains, * * * or from the performance of prior engagements by him, he becomes, the moment the delivery is made, a carrier as to the goods, and his responsibility as such at once attaches." Hutchinson on Carriers, sec. 89; *Mason v. Railroad*, 25 Mo. App. 479. Now, the point at issue here, upon the facts, is, did the evidence adduced tend to prove that Mrs. Gregory's goods were delivered at defendant's depot at Brunswick for immediate shipment, or for as early transportation as could be furnished by the defendant railroad, *or*, on the other hand, were the goods delivered at the defendant's depot with the understanding that they await other goods to be shipped or the future orders of the plaintiff?

The shipment of these goods was intrusted to plaintiff's son, R. D. Gregory, who testified as follows: "Previous to March, 1890, I lived within half a mile of Brunswick. My mother moved the seventh of March; I remember taking her household goods to the depot at Brunswick; I think it was Friday, February 28. On the Sunday following, the fire occurred at the depot in Brunswick, and the Wabash depot burned down. Smith Warden and Henry Thompson were with me, taking the goods down. We took a piano at one load, and a box of books, mahogany center table, what-not and a barrel of pork, the goods alleged in the petition. I put them in the freight depot. I went to Benton and told him I had a piano there, and he says, 'Where does it go to?' and I told him it went to Gallatin, on with the other goods, and he says, 'I have not got any car for it now.' I says, 'What shall I do with it?' He says, 'Put it in the freight room.' We got the goods there, and, with the help of Smith Warden and Henry Thompson, I put them in the freight room. Mr. Benton was the station agent of the Wabash railroad at Brunswick. After Benton told me he did not have a car, I put the goods in the freight room. I did nothing further with the goods. They were destroyed by fire on the Sunday night following. We took the first load of goods about twelve o'clock Friday, and the second load about three, and at about half past three the men put them in the depot. He never gave me a receipt for the goods. I told Mr. Benton, at the time of the delivery of the goods, that I had a piano there with some other goods that I wanted to ship to Gallatin, Missouri, and asked him where I should put them. I did not tell him that I wanted them shipped that day. I did not tell him when they were to be shipped. He asked me where they went, and I told him they went to Gallatin." It may be well to say that the other goods referred to the other wagonload, and were brought to the depot a few hours before the piano. Further on in

cross-examination, this same witness testified that he did not tell the agent, Benton, that he had other goods to ship, didn't tell him anything about it, though he said that he did four days thereafter bring some other goods for shipment to the same place.

Turner, then working for the defendant at the Brunswick depot, testified in substance, that he was at the depot and assisted in placing the goods in the depot freight house; heard the conversation between Gregory and the agent, and that the agent told Gregory that he had no car to put the piano in and to put the goods in the freight house. "I did not hear him tell him to ship them ; he told him he had not all there yet. I did not hear him say that he was going to bring the rest of them at the present time." Thompson, another witness, testified : "Mr. Gregory went to see Mr. Benton, and called Mr. Benton's attention to his piano to know where he should put it, but he told him he had no time to attend to it; he would after awhile ; to put it in the freight house; Benton was busy ; it was near about three o'clock. He told him he was going to ship them, but did not tell him when. I did not hear him tell him about any other goods." Witness Warden was assisting with the goods and he testified : "There was something said about not having a car to put the goods in. Mr. Benton said he would see about it, There was something said to Mr. Benton about shipping them right away, but I don't just remember just what was said."

R. D. Gregory, being recalled, further swore : "When I delivered the goods I told Mr. Benton they went to Gallatin. He said put them in the freight room, he would attend to it later on as he was busy. I did not deliver all the goods at that time. I took them on Monday or Tuesday. I told Mr. Benton to ship the goods when I took them down there first that night. I didn't tell him they were to go that night. I did not

tell Mr. Benton that they were to go immediately.    I never told Mr. Benton anything else than that they were to go to Gallatin."

The foregoing extracts comprise, in substance, all the evidence that tends to show how and for what purpose these goods were left at defendant's depot.    Commenting thereon, we have this to say, if this testimony indubitably showed that these goods were, on February 28, left at defendant's depot and stored in the freight house, to await the delivery there of other goods, not then delivered, when all would be shipped together, then it is clear that the Wabash Railroad Company became only liable for negligence as a warehouse-man, and as there was no such negligence shown it was proper to direct a verdict for the defendant. . But if, on the other hand, the goods were taken to the depot for immediate shipment, and were deposited in the railroad company's storehouse only to await the arrival of a car, and the convenience of the agent, then defendant's liability as a common carrier at once attached, and the holding of these goods thereafter in the depot was no defense to this action.    It is no defense to say that the consignor did not in words say, "Ship immediately," as seems to be the argument of defendant's counsel at the oral discussion of this case.  " A delivery to the carrier with the name and address of the consignee marked upon the goods is, in the absence of some directions or agreements otherwise, equivalent to an express direction to transport them to such consignee *at once*." Hutchinson on Carriers, sec. 89.    There is evidence here tending to prove a delivery for immediate shipment, and that the reason for the delay was not to accommodate the shipper, but rather to subserve the convenience of the railroad company.    One witness, it is true, says that there was something said at the time about there being some other goods to ship.    But the principal witness for the plaintiff, and the party, too, who attended to the matter for the plaintiff, testified that he said nothing

to the defendant's agent as to any other goods except those then delivered. Other witnesses swore to the same effect. Nor is there any evidence whatever that the agent had noticed that the plaintiff had other goods to ship. If plaintiff then contemplated the shipment of other goods, it did not necessarily follow that she intended to have all transported at once.

There was nothing said about shipping by one car, no negotiations for chartering a car, or anything of the kind. We are not here now to decide this case on the facts; only to say that as we read the evidence there was ample testimony justifying a submission of the case to the jury.

The judgment, therefore, will be reversed, and the cause remanded for a new trial. All concur.