Stewart, Ralph & Co. *v.* Gracy & Bro.

STEWART, RALPH & CO. *v.* GRACY & BRO.

*(Nashville.* December 19, 1893.)

1. COMMON CARRIER. *Not liable for loss by fire, when.*

The destruction, by accidental fire, of goods in the custody of the owner's warehouseman is not imputable to the negligence of a carrier who, four days previously, had contracted to remove them, where it appears that the carrier had been diligent, and had been misled as to the warehouse in which the goods were stored, and that the delay was caused by an unusual press of business and the intervention of Sunday and a holiday. (*Post, pp. 515–319.*)

2. SAME. *Same.*

The delivery of goods to a carrier is not complete, and, therefore, his liability for their accidental loss by fire does not attach, where the goods are destroyed in the custody of the owner's warehouseman, after the carrier had contracted to ship the goods and had received the owner's warehouse coupon and an order for delivery of the goods, but had not presented same or issued receipt or bill of lading for the goods. (*Post, pp. 319, 320.*)

Cases cited and distinguished: Deming *v.* Railroad, 90 Tenn., 306; Watson *v.* Railroad, 9 Heis., 255.

---

FROM MONTGOMERY.

---

Appeal from Chancery Court of Montgomery County. GEO. E. SEAY, Ch.

HOUSE & MERRITT for Complainants.

BURNEY & GHOLSON for Defendants.

McALISTER, J.    The object of this bill is to hold the defendants liable for the value of twenty-two hogsheads of tobacco which were destroyed by fire while stored in the Banner Warehouse, in the city of Clarksville.    The theory of the bill is that Gracy & Bro. were common carriers, engaged in running a line of drays for the transportation of freight; that there had been a constructive delivery of the tobacco to this firm of carriers, and they are liable, first, for negligence in not removing the tobacco from the Banner Warehouse to the Grange Warehouse.    It is further insisted by complainants that, independently of the question of negligence, the defendants are liable at all events as common carriers, for the reason there was a constructive delivery of the tobacco to the carrier, and that non-delivery can only be excused by the act of God or the public enemy, neither of which agencies are claimed to have supervened in this case.

The Chancellor was of opinion there had been no delivery of the tobacco to the carrier, either actual or constructive, and upon this ground dismissed complainants' bill.

The material facts necessary to be stated are the following, to wit: The complainants, Stewart, Ralph & Co., are citizens of Philadelphia, where they are engaged in the manufacture of snuff.    This firm makes large purchases of tobacco in the Clarksville market, through their local agent, B. F. Mc-Keage, who is regularly employed for this purpose. The defendants, F. P. Gracy & Bro., are the pro-

prietors of a large warehouse in Clarksville, which
is used for the storage of tobacco. This firm is
also engaged in the transfer business, carrying
freight for hire from place to place in the city of
Clarksville, and, as such, are common carriers. It
appears that in June, 1892, B. F. McKeage, as the
agent · of the Philadelphia firm, purchased fifty-six
hogsheads of tobacco from the firm of Smith, An-
derson & Wood. This firm of Smith, Anderson
& Wood were the proprietors of the People's
Warehouse, and, not having sufficient accommoda-
tions in their own warehouse, they had rented
storage room in the Banner Warehouse, which was
owned by the firm of Meriwether & Co. The
proof shows that twenty-two hogsheads of the lot
purchased by McKeage of Smith, Anderson &
Wood were on storage in the Banner Warehouse,
in the space under the control of Smith, Ander-
son & Wood. McKeage had contracted with F.
P. Gracy & Bro. to store this tobacco in the
Grange Warehouse—that is to say, the whole lot
of fifty-six hogsheads purchased of Smith, Ander-
son & Wood. McKeage thereupon delivered to F.
P. Gracy & Bro., as common carriers, the warehouse
coupons for this tobacco, issued to McKeage, as
agent, by the firm of Smith, Anderson & Wood.

It appears that it is the custom of the trade,
when a sale of tobacco is made, to issue to the
purchaser a coupon for each hogshead. This cou-
pon described the hogshead by number, mark,
weight, specifying the warehouse in which it was

stored, and was an undertaking to deliver it to the bearer of the coupon upon demand. At the time these coupons were delivered to Gracy & Bro., McKeage also gave them a written order on Smith, Anderson & Wood for the tobacco. The order was dated July 2, but the proof shows it did not come into the hands of F. P. Gracy & Bro. until July 3. It appears that nothing was done toward moving this tobacco on the third for the reason there were prior orders which required immediate attention. It appears that, on the second and third of July, a large quantity of tobacco was ordered shipped by rail, and about three hundred hogsheads ordered removed from one warehouse to another, in addition to which there were five hundred hogsheads that required handling. It appears that Gracy & Bro. were at that time working all the force they could handle, and had hired all the teams they could utilize. Their capacity for handling tobacco was from 350 to 400 hogsheads daily. The season in which these events transpired was one of extraordinary activity in that line of business. It was therefore impossible for the defendants to have moved this tobacco on the third of July. The next day was the fourth of July, and a legal holiday. The day following was Sunday. On the morning of July 6 the order and coupons were delivered by Gracy & Bro. to Smith, Anderson & Wood, at the People's Warehouse, where the coupons indicated the tobacco was stored. This warehouse, it appears, had three or four hun-

dred orders ahead of the McKeage orders, and
their capacity for delivering was from one hundred
to one hundred and fifty hogsheads daily. Gracy
could only receive the tobacco as it was delivered
to him by the warehouse, and they received it
on their drays as rapidly as the warehousemen
turned it out.

It appears that Gracy & Bro. had no knowledge
that any portion of this tobacco was stored in the
Banner Warehouse. This firm was not notified of
this fact either by McKeage or Smith, Anderson
& Wood. On the contrary, the coupons were
stamped "People's Warehouse," which, in itself,
excluded the idea that any part of the tobacco
was stored in the Banner Warehouse. On the
night of July 7 the Banner Warehouse was de-
stroyed by fire, and the twenty-two hogsheads were
consumed in the flames.

As already stated, the object of this suit is to
hold Gracy & Bro. liable for the value of the
twenty-two hogsheads of tobacco lost in the Ban-
ner Warehouse. The first ground upon which lia-
bility is claimed is, that defendants were negligent
in not delivering the tobacco from the Banner to
the Grange Warehouse. Without going further
into the evidence, we are of opinion, upon the
facts found in the record, that defendants are not
chargeable with negligence, but exercised ordinary
diligence in trying to effect a removal of this to-
bacco. While it is true the record shows that
defendants knew that Smith, Anderson & Wood

were occupying a portion of the Banner Warehouse for the storage of tobacco, they had no knowledge that this particular tobacco was stored there, and they are not chargeable with negligence in not knowing it, since the stamp of "People's Warehouse" on the face of the coupon would have led any reasonably prudent man to believe that all of the fifty-six hogsheads were stored in the People's Warehouse.

The next ground of liability claimed is that this tobacco had been constructively delivered to the defendants, as common carriers, and that they thereby became insurers against all losses, except those occasioned by the act of God or the public enemy. The argument of counsel is that the coupons for the tobacco, accompanied by the order from McKeage to move the tobacco, had been delivered to defendants, and entered upon their books. It is insisted the order and coupons had been accepted by the carrier, and that, by virtue of holding them, they had commenced to move, and had, in fact, moved a portion of the fifty-six hogsheads to the Grange Warehouse, where defendant had contracted to carry it. The argument is that these acts constituted a constructive delivery, and the tobacco thereby passed under the control and custody of the carrier for removal, and that the carrier's liability at once attached. We are unable to concur in this contention. The contract of carriage involves a bailment, and ordinarily there must be an actual delivery of the goods to the

carrier. A contract with a common carrier for the transportation of property being one of bailment, it is necessary, in order to charge him for its loss, that it be delivered to and accepted by him for that purpose. But such acceptance may be actual or constructive. If, for instance, the property be deposited at a designated station, in accordance with a conventional arrangement between the parties in respect to the mode of delivery, or if it be deposited with a third person, who is authorized by the carrier to execute a bill of lading in the name of the carrier, then such mode of delivery is as complete as if the property had been actually deposited with the carrier. To this effect was *Deming* v. *Railroad*, 6 Pickle, 306. See also Hutchinson on Carriers, Secs. 1, 79, 82; *Watson* v. *Railroad*, 9 Heis., 255. But in the case at bar the tobacco was not deposited with an agent of the carrier, but it was left in the custody of an agent of the shipper, and, constructively, in the possession of the shipper himself. The carrier did not execute a bill of lading or receipt for the property, nor did he in any way acknowledge that the property was in his custody. The carrier in this case simply had an order from the shipper to enable him to get possession of the tobacco. If the warehouseman had refused to recognize the order, and had converted the property to his own use, the carrier would not be liable, simply for the reason that he had never secured the possession of the goods. So in this case, the tobacco was de-

stroyed by fire before the carrier could get it in his possession; and, as we hold he was guilty of no negligence, he cannot be made liable simply upon the ground that he had accepted an order from the shipper to enable him to get possession of the tobacco.

The decree is affirmed, with costs.

Judges Lea and Caldwell dissent.