MORRISON GRAIN COMPANY, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Apellant.

Kansas City Court of Appeals, July 6, 1914.

1. COMMON CARRIERS: When Relation of Shipper and Carrier Begins: Execution of Bill of Lading.  When goods are delivered to a common carrier for immediate shipment, that is, in the ordinary course of the carrier's business, and they have been accepted by the carrier for that purpose, the full responsibility of the carrier as such at once begins, even though the bill of lading has not been executed.

2. ——: ——: ——.  Since the bill of lading is a receipt for the goods and a contract to carry, it would seem that necessarily the goods must be delivered to and accepted by the carrier for transportation, as the bill of lading is only evidence of the contract of shipment.

Grain Co. v. Railroad.

3. ———: ———: ———: **Liability as Warehouseman.** Goods delivered to a common carrier which are to be held for the convenience of the shipper and not to be shipped until some future time or until after something has been done to the goods themselves by the shipper, cannot be said to be in process of transportation by the carrier. The latter holds them as a warehouseman, and his liability is measured as such.

4. ———: **Lease of Elevator to Shipper: Release of Damages.** A release of all damages by fire contained in a lease from a common carrier to a shipper *held* to apply only to goods while in or used in connection with the elevator, and not to property delivered to and received by the carrier for transportation.

5. ———: ———: ———: **Federal Regulations: Interstate Shipment.** Under the Federal regulations governing interstate shipments, a common carrier cannot by a mere stipulation in an independent contract, such as a lease of an elevator, having no connection with the contract of shipment of goods, relieve itself of its liabilities as a common carrier.

6. **PLEADING: Inconsistent Counts: Dismissal of One.** Even if two counts of a petition are mutually contradictory of each other and, therefore, self destructive, yet, if at the trial one of them is dismissed and the case submitted to the jury upon one count only, the fact that the petition as originally drawn was a *felo de se* becomes immaterial.

7. **TRIAL PRACTICE: Verdict: Allowance of Interest.** Where the petition clearly limits the amount sought to be recovered to the value of the goods lost and therefore cannot be considered as asking for interest, the jury cannot award interest upon the damages even if interest would otherwise be allowable.

Appeal from Jackson Circuit Court.—*Hon. John I. Williamson*, Special Judge.

AFFIRMED CONDITIONALLY.

*Martin L. Clardy* and *Edward J. White* for appellant.

(1) The court erred in overruling the demurrer asked at the close of the plaintiff's case. Bank of Monett v. Stone & Prickett, 93 Mo. App. 292; McCord v. Railroad, 21 Mo. App. 95; Cobble v. McDaniel, 33

Mo. 363; Darrett v. Donnelly, 38 Mo. 492; Adams v. Trigg, 37 Mo. 141; Behen v. Transit Co., 186 Mo. 439. (2) The plaintiff's petition combined a cause of action *ex delicto* with one *ex contractu,* and the same cannot be joined under the code. Pruitt v. Warren, 71 Mo. App. 84; Sumner v. Rogers, 90 Mo. 324; O'Reilly v. Disk, 48 Mo. App. 62; Jordan v. Transit Co., 202 Mo. 418; Barnes v. Railroad, 119 Mo. App. 303. (3) The instruction to the jury to calculate interest on the amount of the plaintiff's recovery was clearly erroneous under the decisions of the courts of this State. Gerst v. St. Louis, 185 Mo. 191; Meyer v. Insurance Co., 95 Mo. App. 721; Feller v. McKillip, 109 Mo. App. 61; Horner v. Railroad, 70 Mo. App. 285; Commercial Co. v. Bank, 74 Mo. App. 633; Roberts v. Hardy, 89 Mo. App. 86.

*Sebree, Conrad & Wendorff* for respondent.

(1) Only one count of plaintiff's petition was submitted to the jury. Jordan v. Transit Co., 202 Mo. 418; White v. Railroad, 202 Mo. 539. (2) At the time of the fire, the defendant had accepted the car of corn as carrier. Gregory v. Railroad, 46 Mo. App. 574; Reading v. Railroad, 165 Mo. App. 123. (3) There may be an acceptance for transportation before a bill of lading is made out. Mason v. Railroad, 25 Mo. App. 473; Hutchinson on Carriers (3 Ed.), Sec. 127; Railroad v. Hull, 64 Tex. 615; Moss v. Railroad, 153 Mo. App. 602; Hoover v. Railroad, 113 Mo. App. 688; Holland v. Railroad, 139 Mo. App. 716; Milne v. Railroad, 155 Mo. App. 465, dictum. (4) The question of acceptance of the corn by defendant as carrier was a jury question, and was properly submitted. Reading v. Railroad, 165 Mo. App. 123; Milne v. Railroad, 155 Mo. App. 465; Gregory v. Railroad, 46 Mo. App. 574. (5) Plaintiff was entitled to interest. Padley v. Cattery, 64 Mo. App. 629; Gregory v. Packet Co., 64 Mo.

47; Goodman v. Railroad, 71 Mo. App. 460; Warehouse Co. v. Railroad, 124 Mo. App. 545; Lachner Bros. v. Express Co., 72 Mo. App. 13.

TRIMBLE, J.—Originally the petition in this case was in two counts. In both the plaintiff sought to recover damages for the loss of a carload of kaffir corn. The first count alleged a delivery of the corn to defendant as a common carrier for transportation, a failure to deliver same, and its loss to plaintiff. The second alleged that after defendant had placed a car in front of plaintiff's elevator and the latter had loaded it with kaffir corn for transportation by defendant, and had left it within the 100-foot zone of the elevator covered by plaintiff's insurance, defendant wrongfully moved it that night beyond said 100-foot zone and exposed the car to loss by fire without insurance and the car was on that night destroyed by fire, to plaintiff's damage in the sum of $577.50.

At the trial plaintiff dismissed the second count because of failure of proof. Therefore whether the two counts were contradictory of each other and made the petition a "murderer of itself," is not material or of consequence now, since the case was submitted upon the first count only. [Jordan v. St. Louis Transit Co., 22 Mo. 418, l. c. 426; White v. St. Louis & Meramac River R. Co., 202 Mo. 539, l. c. 561.]

The question presented by the first count is, was there a delivery of the car of corn to, and an acceptance thereof by, defendant sufficient to render the latter liable?

The evidence showed that plaintiff's elevator was located upon a switch extending from defendant's tracks; that this switch was used by defendant in transporting cars to and from said elevator in the business of hauling grain to the elevator or in taking it away from there. Plaintiff, desiring to ship a carload of kaffir corn, ordered defendant's station agent

at a station a few hundred feet from the elevator, to place a car at the elevator to be loaded, giving the agent the name of the consignee and destination of the corn; all of which, together with the number of the car, the agent placed on his books of orders. The car was, by defendant, set at the elevator and loaded by plaintiff with 66,000 pounds of kaffir corn. The loading was finished about dusk, and plaintiff notified the station agent that the car was loaded and that he would write out the bill of lading in the morning. The car was then standing at the elevator where it had been loaded.

It seems that if a car was in process of being loaded and it became necessary for defendant's trainmen to go upon the switch to get other cars for transportation, they would switch the car being loaded out of the way for the time being and then put it back at the loading point in front of the elevator. But if defendant was notified that the car was loaded, this meant that the car was so far ready for transportation that defendant could take possession of it, move it from the elevator and not return it thereto without regard to whether the bill of lading was written or not. The car would be moved about in the work of getting cars for shipment and would be treated as a car in the possession of the railroad for shipment the same as one upon which the bill of lading had been executed, but of course, no car would actually start finally on its journey away from the station until the bill of lading had been signed.

The station agent having been notified that the car was loaded and knowing that the bill of lading would be executed the next morning, told defendant's switching crew, who were engaged in arranging and marshaling the cars for shipment, that they could move the car of corn from the elevator and not replace it, and the switch crew did so, putting the car in a location convenient for taking it out on the road with

other cars at that station when the train which would take them was ready to start on its journey. This location as a matter of fact was a few hundred feet nearer the destination of the corn than was the loading point of the elevator. And in moving the car from the loading point to the place where it was left for the night, the train crew were merely doing that portion of the work necessary to be done to the car before the start could be made. The point where the car was left was close to or adjoining the depot, and during the night a fire destroyed the car of corn. It is claimed there is no evidence as to where the fire came from nor how it originated. But the record shows that the depot burned and the fire was communicated from thence to the car of corn. However, under the view we take of the case, the origin of the fire is not material.

As the bill of lading was not executed at the time of the fire, was the corn in the possession of defendant for transportation so as to render it liable as a common carrier? The question whether the car had been delivered to defendant and accepted by it for transportation was submitted to the jury and the latter by its verdict found that it had. So that unless we can say, as matter of law, that it had not, or that notwithstanding such facts, the defendant was not liable as a carrier because the bill of lading was not executed, the point under consideration will have to be decided adversely to defendant.

In 1 Hutchinson on Carriers (3 Ed.), Sec. 127, it is said it has often been held that no entry upon a waybill or written memorandum is necessary to complete a delivery to the carrier. All that is necessary is a deposit of the goods with the carrier for the purpose of transportation and if they be accepted by him to be sent forward in the ordinary course of business whether accompanied by the owner or not, the full responsibility of the carrier at once begins. And the

same authority at section 119, says the responsibility for the safety of the goods shifts from the owner to the carrier as soon as delivery for the purpose of shipment is made and the carrier has accepted the goods for that purpose. In Mason v. Mo. Pac. Ry. Co., 25 Mo. App. 473 it is held that where delivery of freight is made to the carrier for early transportation, the latter, upon accepting it for such purpose, becomes liable as such carrier, the deposit being a mere accessory to the carriage, and the carrier's liability is not postponed to the time when the goods shall be actually put in motion toward their destination.

In East Line, etc. R. Co. v. Hull, 64 Tex. 615, it is held that, notwithstanding a statute providing that transportation of goods by a common carrier shall be considered as having commenced from the time the bill of lading is signed and the common-law liability of the carrier shall attach from that time, the liability of the carrier begins from the time the goods are delivered to and accepted by the carrier. The responsibility imposed by the common law upon a carrier makes it liable for the safety of goods delivered for shipment and accepted by it for that purpose. [Tate v. Yazoo, etc. R. Co., 84 Am. St. 649, 1. c. 651.]

It is held in Milne v. Chicago, etc. R. Co., 155 Mo. App. 465, that a common carrier may become responsible for property entrusted to its care for transportation even before a bill of lading is signed, and that the carrier's duty and obligation always attach as soon as the delivery of goods for transportation is completed so as to place upon it the exclusive duty of seeing after their safety. In fact, the bill of lading is a receipt for the goods and a contract to carry. The delivery of the goods and the acceptance of them, therefore, necessarily precede the execution of the bill of lading. It would seem that if the delivery and acceptance of the goods is for immediate transportation and they are not merely held by the carrier to await the further

convenience of the owner before he ships them, the delivery and acceptance is a part of the entire transaction between shipper and carrier and the liability should at once attach since the contract has, in fact, been made and the bill of lading is only evidence of it.

In the case at bar there was evidence that when the carrier was notified that a car was loaded this meant that the carrier could take possession of it for the purpose of shipment. And the station agent took possession of it and had it moved and switched in the same way it would have to be switched in order to go to its destination, and this was done for the convenience of defendant's switching force.

The fact that the shipper said he would fill out the bill of lading in the morning did not show that there was no delivery of the car. Waiting until morning to fill out the bill of lading did not postpone the shipment. There was no evidence that the car would have gone any sooner than it otherwise would had the bill of lading been made out that evening. Nor does the evidence show that the freight had to be paid by the shipper before the car started. Consequently, there was nothing done by the shipper to postpone the shipment, but the delivery was for immediate shipment according to the regular course of defendant's trains. Where goods are received by the carrier to be forwarded in the usual course of business the liability of a common carrier attaches immediately. [5 Am. & Eng. Ency. of Law (2 Ed.), 261.

The shipment was from Richland, Kansas, to Kansas City, Missouri, and was, therefore, an interstate shipment. The authorities hereinabove cited hold that, if the goods are delivered to and accepted by the carrier for immediate shipment, the liability of the latter attaches from the moment of such delivery and acceptance, even though the bill of lading is not made out. The liability of the defendant in this case became fixed

therefore unless, by reason of the shipment being interstate in its character, a different rule is applied.

Nothing is said in the briefs on either side about this feature of the case, however, and we presume that the fact of its being an interstate shipment does not change or affect the situation, otherwise the question would have been raised and such point made. The Carmack Amendment of June 29, 1906, (34 Stat. 584, ch. 104) to the Hepburn Act of February 4, 1887 (34 Stat. 584, ch. 3591) provides that the carrier "shall issue a receipt or bill of lading" for property received for transportation (Adams Express Co. v. Croninger, 226 U. S. 491, l. c. 504), but it nowhere says the liability of such carrier shall not attach until such bill of lading has been issued. At least our attention has not been directed to any decision holding to that effect. If the carrier chose to accept and begin the transportation of goods without issuing a bill of lading it would be violating the act referred to, but the relation of shipper and carrier would exist none the less.

The agent took possession of the car, had it switched to where it would have to go when finally started, being satisfied that the contract would be signed in the morning, and treated it as a car for immediate shipment, and defendant did not intend to return it to the elevator. The question whether it was delivered and accepted for shipment was a jury question. [Milne v. Railroad, supra; Reading v. Railroad, 165 Mo. App. 123; Gregory v. Wabash Railroad, 46 Mo. App. 574.] The jury has decided the question and upon evidence sufficient to justify the finding.

Cases which show that goods were merely left at the station, not to be transported immediately in the usual course of business, but to first have something done to them (such as cotton to be compressed) or to await the future convenience or desire of the shipper, are not in point. In the class of cases first mentioned there was no delivery to the carrier, and in the

second class the goods were not to be shipped but to be held by the carrier as a warehouseman until the owner decided to ship.

The defendant claims that under and by virtue of the lease by which it leased the elevator to plaintiff all damages from loss by fire were released. The court excluded this defense, and we think properly so. The release applied to property in or upon the leased property or used in connection therewith and not to property delivered to and received by defendant as a common carrier.

Again, under the Federal regulations governing interstate shipments, the defendant cannot, by a mere stipulation in an independent contract such as a lease of an elevator, having no connection with the contract of shipment of the goods, relieve itself of its liabilities as a common carrier. It can do this only in the mode pointed out in such regulations so that all shippers will be treated alike, which would not be the case if defendant were allowed to absolve itself by a clause in a contract leasing a piece of property to the shipper. [American Sugar Ref. Co. v. Delaware, etc. R. Co., 207 Fed. 733.] If the defendant could relieve itself of liability by a special contract to one shipper, it could in this manner make all sorts of discriminations which the interstate commerce laws are designed to prevent.

Complaint is made of the giving and refusing of instructions. The refusing of defendant's instructions was not error since they were drawn upon the theory opposed to the view taken by the trial court which view is upheld in the foregoing opinion. As to plaintiff's instruction given, if it was required to tell the jury what facts were necessary to constitute a delivery to and acceptance by defendant of the goods for transportation, this was fully done by defendant's instructions. However, the *facts*, or rather the *acts* done were not disputed but were conceded. The only dispute was over the legal effect of them and perhaps the *in-*

*tention* with which those acts were done, and there was a very slight dispute as to that. But whether the intention was disputed or not the defendant's instructions fully supplied the lacking element if plaintiff's instructions lacked any.

The jury, in addition to the value of the corn destroyed, $577.50, allowed interest thereon at six per cent and returned a verdict for $646.80. Without going into the question whether plaintiff is entitled to interest under the circumstances of this case, had interest been demanded in the petition, it may be said that no interest was asked and for this reason, if for no other, interest cannot be allowed. Interest may perhaps be allowed under a general allegation of damaegs, but the only allegation of damages contained in the petition is limited to the precise value of the corn, $577.60, and no other additional amount is prayed for.

The plaintiff will, therefore, be required to remit $69.30 so as to bring the verdict down to the value of the corn $577.50.

Wherefore, the judgment is affirmed on condition that the above remittitur is made within ten days from the announcement of this opinion, otherwise the case will be reversed and remanded. The other judges concur.