CURTIS TIRE & RUBBER CO. *v.* GOODRICH TRANSIT CO.

CARRIERS—CARRIER LIABLE FOR GOODS DESTROYED WHILE IN SHIP-
PER'S HANDS FOR RECONDITIONING AFTER ACCIDENT IN TRANSIT.
 Where automobile tires were damaged while in the hands
 of the carrier, and at its request and offer to pay there-
 for, the shipper, without surrendering the bill of lading,
 received them back for the purpose of reconditioning,
 when they were to be reforwarded on the original bill of
 lading, constructive possession was all the time in the
 carrier, and, therefore, it is liable for their destruction
 by fire while in the shipper's warehouse.[1]    CLARK and
 FELLOWS, JJ., dissenting.

Error to Muskegon; Vanderwerp (John), J.    Sub-
mitted October 14, 1924.    (Docket No. 87.)    De-
cided April 24, 1925.

Case by the Curtis Tire & Rubber Company against
the Goodrich Transit Company for damage to goods
in transit.    Judgment for plaintiff.    Defendant
brings error.    Affirmed.

*Bates, Hicks & Folonie* and *Cross, Foote & Sessions,*
for appellant.

*Edward C. Farmer,* for appellee.

MOORE, J.    The plaintiff suffered a loss by fire
under such circumstances that it claimed defendant
was liable.    It brought this suit to recover damages.
At the close of the testimony a motion was made for
a directed verdict on the part of the defendant.    This
motion was overruled and the jury returned a verdict
in the sum of $7,633 in favor of the plaintiff.    A

[1]Carriers, 10 C. J. § 323 (1926 Anno).
On liability of carrier for loss or damage to goods while being
returned to shipper, see note in 22 L. R. A. (N. S.) 945, 975.
On what constitutes delivery of freight to carrier, see notes in
32 L. R. A. (N. S.) 313; L. R. A. 1916C, 608; 22 A. L. R. 970.

motion was made for judgment *non obstante*.   This was overruled.   A motion was then made for a new trial which motion was denied.   The case is brought into this court by writ of error.

The errors assigned may be grouped under three heads:   Errors in the admission of testimony; errors in refusing requests to charge, and the charge as given; errors in refusing a directed verdict, and a motion for a new trial.

The plaintiff was making automobile tires in Muskegon.   It shipped a quantity of them by a boat owned by the defendant.   Standard bills of lading were issued by the defendant to the plaintiff.   Before the boat reached Chicago, water got into the hold of the vessel and water-soaked the goods shipped by the plaintiff.   It is the plaintiff's claim that defendant made an arrangement with it to recondition and repack the goods so they would be presentable and would pay the plaintiff for doing so, and would then convey the goods to the consignees as provided in the original bills of lading.   These bills of lading were not surrendered.   It is the further claim that plaintiff received the goods simply to put them in condition for the defendant when they were to be forwarded as stated.   It is the further claim that they put the goods in condition and notified the defendant, and were directed to hold the goods because defendant's warehouse was glutted with freight, and that the next day after one of these requests was made the goods were totally destroyed by fire.

The defendant with its plea gave notice among other things that these tires at the time of their destruction by fire were in the sole possession and control of plaintiff; that the contract of carriage made when the tires were originally shipped was terminated; that the title to said tires was in the plaintiff, and, when same were delivered to it by the defendant, plaintiff assumed

full control over the tires; and this was substantially its claim on the trial.

The defendant said in substance that after the accident happened to the ship the goods were returned to the plaintiff under an arrangement that the plaintiff would take back the goods and recondition them and at a later date deliver them to the defendant for transportation; that plaintiff might send part of these goods to the same consignees and to replace them in part with other tires; that while the defendant was to pay the plaintiff for the work on the tires, the defendant claims that plaintiff had full control over the tires when they were taken back and the defendant had ceased to be a common carrier and had no responsibility regarding them whatever. The defendant further claims that it never afterwards refused to accept the goods for shipment as claimed by the plaintiff.

The trial judge stated fairly the claim of the respective parties and submitted the case to the jury as follows:

"There is only one question, gentlemen, for you to determine, and that is this, What was the arrangement and agreement between the plaintiff and the defendant after the time of the accident to the Alabama whereby the goods were injured or damaged? If you find by a preponderance of the evidence that it was agreed that the goods should be returned to the plaintiff for reconditioning or repairing, the defendant to pay the expenses thereof, and then to be returned to the defendant for continuation of their journey to the consignees to whom they had been originally consigned and under the original contract of shipment, the plaintiff having nothing to do with or control over the goods except to repair the damage done to them while on its boat, the same being done at the defendant's request and for its benefit, then the original contract of shipment was still in force and the plaintiff is entitled to recover from the defendant the value of the goods at the time they were

destroyed by fire, with interest at five per cent. per annum from that time to this date.

"If on the other hand, gentlemen, you do not so find but find that the goods were returned to the plaintiff and received by it to be reconditioned or repaired by the plaintiff at the defendant's expense, but that plaintiff thereafter had entire control over them to again reship them to the original consignees or to others as they might later determine, and the goods were thereafter never re-offered to the defendant for shipment, in other words, that the original contract for shipment of the goods ceased and was entirely at an end when the plaintiff again received the goods, on or about March 24, 1920, and the goods were thereafter not held by the plaintiff at defendant's risk but were under plaintiff's control to do with in the future as it saw fit, then the defendant is not liable for the value and the plaintiff cannot recover. To put it another way, gentlemen, if the arrangement was that the goods were returned to the plaintiff on March 24, 1920, unconditionally, without any further responsibility or control by the defendant over them and for the plaintiff to do with them as it saw fit, thereafter, the defendant only agreeing to pay the expense of the repairs on them for the damage by the accident while they were on the boat, then, of course, the plaintiff cannot recover in this case and your verdict should be for the defendant.

"To determine that question, gentlemen, or the question that is submitted to you, you should take into consideration all of the evidence in the case, both the testimony of the witnesses and the exhibits offered and received in evidence, also take into consideration what the parties did regarding these goods after that time, and what was said in the correspondence as bearing upon what the agreement was between the parties, and take into consideration, gentlemen, all the facts and circumstances as disclosed by the evidence, as I say, bearing upon the question that I have referred to and which you are to determine, that is, as to what the arrangement and agreement was at the time the goods were returned by the defendant to the plaintiff and under which the goods were returned by the defendant to the plaintiff."

The position of counsel for the appellant is stated as follows:

"Where goods are lost by fire, while in the control or possession of the owner, the loss must fall on the owner. This principle is elementary and there is no warrant for discarding this rule simply because the owner has made an attempt to ship the goods and such attempt has proved a failure resulting in the owner again having them in his possession and using them in whole or in part in preparing a new lot of shipments. Where it is sought under such circumstances, to create an exception to the rule, and hold the carrier for a loss when it had neither the possession of nor control over such goods at the time they were destroyed, the proofs should be convincing that such liability was created by special agreement; no such proof exists in the instant case."

Counsel cite in support of their position 1 Hutchinson on Carriers (3d Ed.), § 119; *Stapleton* v. *Railway Co.*, 133 Mich. 187; *Barron* v. *Railroad Co.*, 2 Ala. App. 555 (56 South. 862), and other cases.

There is not much controversy about the law if the facts were as stated by counsel. The testimony as to the facts is in dispute. If the facts were as claimed by the plaintiff it had shipped its goods by the defendant's line, had received bills of lading for them; the goods had been damaged so that the consignee would doubtless have refused them, and that plaintiff without surrendering its bills of lading simply undertook at the request of the defendant to put the goods in repair when they were to be reforwarded on the original bills of lading. If this contention was true we think it may be said that while the actual possession of the goods was in the plaintiff to make the repairs the constructive possession was all the time in the defendant. The diligence of counsel has not enabled them to cite a controlling authority.

We think the pivotal question was one of fact and that it was fairly submitted to the jury. We have

considered the other questions, but think it unnecessary to discuss them.

The judgment is affirmed, with costs to the appellee.

MCDONALD, C. J., and BIRD, SHARPE and STEERE, JJ., concurred with MOORE, J.

WIEST, J. (*concurring*).    I concur in the opinion of Mr. Justice MOORE.    All authority holds the carrier, if a common one, bound to deliver in good order, at least free from injury in transit.    If damage is occasioned the shipment in transit, remedial by reconditioning, it is the duty of the carrier to restore the condition, if reasonably possible, and then make delivery.    The carriage here was temporarily arrested by defendant for the purpose of enabling it to perform its obligation to make delivery in good order. The carriage was not abandoned, modified or ended, for the agreement for reconditioning was bottomed upon defendant's duty in the premises and a clear recognition thereof by shipper and carrier.

I shall spend no time on the general question of when the relation of carrier begins, for it is admitted here that the relation existed at the time the goods were injured.    The question is whether the relation, so existing, ceased upon the undertaking of plaintiff, at defendant's request, to recondition the goods that defendant might make delivery under the contract of carriage.    A search of the books discloses no case like this.    The nearest in point, and that only by analogy, is *St. Louis, etc., R. Co.* v. *Brass* (Tex. Civ. App.), 133 S. W. 1075.    In that case the carrier, in the course of carriage, was required to compress a large quantity of cotton, and attempted to do so at the compress at Athens, in which compress the shipper was interested, and there the cotton was destroyed by fire.    The carrier claimed:

"That said cotton was not in its possession when

burned, but was in the possession of appellee and his agent; that it had parted with possession of same as a common carrier by delivering it in conformity with said bill of lading to the plaintiff and his agent at Athens, in whose possession it was when destroyed."

Mixed in the case are some local statutes and regulations of the Texas railroad commission, but not to an extent to remove the question from common-law rules. It was held that the delivery of the shipment by the carrier to the compress for compression was a part of its duty as a common carrier and such delivery did not relieve it from its common-law liability.

In the case at bar it was the duty of defendant to recondition the goods damaged in the course of carriage, and delivery of the goods to the shipper to perform the service was special and in recognition of defendant's obligation, and, therefore, in no sense a return of the goods, but only a mere temporary interruption of the carriage to enable the carrier to perform its common-law obligation. To raise a cancellation of the contract of carriage and to discharge the carrier from its obligation, out of its recognition of obligation to recondition the goods, is not permissible, and would ignore the obligation and run counter to its very undertaking to meet the same.

Under the findings of the jury and applicable law the judgment should be affirmed.

FELLOWS, J. (*dissenting*). I am unable to agree with the opinion prepared in this case by Justice MOORE. Plaintiff's case made on the record is this: Under a standard bill of lading it shipped by defendant's steamer Alabama several consignments of tires. The Alabama, when near Chicago, suffered an accident; the tires were not destroyed but were damaged so as to be unsuitable for delivery; they had to be reconditioned, rewrapped and repacked. The parties then entered into an agreement that the tires were

to be returned from Chicago to plaintiff's plant in Muskegon and by it reconditioned, rewrapped and repacked and were then to be delivered to and accepted by defendant and forwarded under the original bill of lading; that the tires were so returned to plaintiff; it reconditioned, rewrapped and repacked them; they were ready for shipment and by telephone plaintiff notified defendant of this fact, but defendant claiming its warehouse was overcrowded declined to then accept them for shipment and they were burned in a fire which destroyed plaintiff's plant.

When the Alabama met with an accident and plaintiff's tires were damaged, it had a cause of action against defendant; it could have brought suit and recovered its damages; it could also adjust such damages by agreement; defendant also gave it another option; in its letter to plaintiff notifying it of the damage to its shipment and shipments of others, it said:

"If any of the shippers prefer to abandon the property to the underwriters we have no objections."

Plaintiff preferred to adjust matters because, as the record discloses, it was short of tires and there was a big demand for them.    It also reserved the right to substitute other tires in the reshipment.    In its letter to defendant, it said:

"The reshipment to our customers may not include the identical articles in the original shipment, but will include like articles."

While it reserved this option it did not exercise it. In my judgment, accepting in full the case made by plaintiff, it presents a question of law pure and simple. There is no claim that the fire which destroyed plaintiff's plant was in any way caused by the negligence of the defendant, and plaintiff must recover, if at all, on the theory that at the time of the fire when the goods were still in its actual possession and before defendant had accepted them for reshipment, the re-

lation of carrier and shipper existed between the parties, making defendant liable as an insurer.

When the accident befell the Alabama and the tires were thereby rendered unsuitable for delivery the first shipment came to an end. Under plaintiff's claim, before they were shipped again they were to be returned to it, reconditioned, rewrapped and repacked and were then to be redelivered to and accepted by defendant and reshipped by it to the consignees. The crucial question of law in my judgment is this: Did the relation of shipper and carrier exist between the parties before the tires were redelivered to defendant and accepted by it for immediate transportation? and the solution of the question depends upon what is necessary to create this relation so as to impose on the defendant the extremely hazardous responsibility of a common carrier. In 1 Hutchinson on Carriers (3d Ed.), § 105, it is said:

"The duties and obligations of the common carrier with respect to the goods commence with their delivery to him; and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or obligation between the carrier and the owner of the goods. It must rest entirely upon the one or the other; and until it has become imposed upon the carrier by a delivery and acceptance, he cannot be held responsible for them."

In 4 R. C. L. p. 688 it is said:

"A contract with a common carrier for the transportation of property is, as is well known, one of bailment; consequently, in order to charge him for its loss, it is necessary to establish as a fact that it was delivered to and accepted by him for that purpose, and until such delivery and acceptance he is ordinarily not responsible for the safety of articles intended for shipment. The point of time marking the commencement of the carrier's liability is therefore that moment when the shipper surrenders the entire custody of his goods, and the carrier receives

complete control of them, for the purpose of shipment at the earliest practicable opportunity in the usual course of business."

In *St. Louis, etc., R. Co.* v. *Murphy*, 60 Ark. 333 (30 S. W. 419, 46 Am. St. Rep. 202), the court said:

"When the shipper surrenders the entire custody of his goods to the carrier for immediate transportation, and the carrier so accepts them, *eo instanti* the liability of the common carrier commences.    When this occurs, the delivery is complete, and it matters not how long, or for what cause, the carrier may delay putting the goods *in transitu;* if a loss is sustained, not occasioned by the act of God or the public enemy, the carrier is responsible.    But, on the contrary, as there is no divided duty of safe keeping, and no apportionment, in the event of a loss, between the owner and the carrier, the surrender of control over the goods by the shipper must be such as to give the carrier the unqualified right to put at once *in itinere,* and the carrier must have received them for that purpose. So that, when goods are delivered to the carrier that are not yet ready for shipment, awaiting further orders from the owner, or the happening of some contingency or compliance with some condition before they are ready to be moved, the liability of the carrier in the meanwhile can be no greater than that of an ordinary depositary or bailee.    These general principles are recognized by all the authorities."

Justice Cothran in a concurring opinion in *Behrman* v. *Railroad Co.,* 118 S. C. 48 (109 S. E. 397, 22 A. L. R. 957), quite clearly pointed out what proof is necessary to fix liability as a common carrier.    He said:

"In order to charge the carrier with the practically absolute liability of a common carrier as compared with the limited liability of a warehouseman, the burden  is upon the owner of the goods to establish: (1) That there has been a complete delivery of the goods to the carrier, actual or constructive;  (2) that the delivery has been made for shipment, with full shipping directions;  (3) that the goods have been

accepted by the carrier for immediate shipment or at such time as the convenience of the carrier may suggest; (4) that the goods have gone into exclusive possession of the carrier and that nothing further is to be done with or to them by the owner."

In *Turner Co.* v. *Railroad Co.*, 86 Conn. 71 (84 Atl. 298, Ann. Cas. 1913D, 637), it was said:

"The law is well settled that until the goods to be carried are delivered for immediate transportation, the receiver does not hold them in the capacity of common carrier. His liability in that capacity commences upon the complete delivery of the goods for immediate transportation."

And in *Barron* v. *Eldredge*, 100 Mass. 455 (1 Am. Rep. 126), it was said:

"The responsibility of a common carrier, for goods intrusted to him, commences when there has been a complete delivery for the purpose of immediate transportation. * * * The delivery must be for immediate transportation, and, of course, it cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way. * * * The more stringent liability of a common carrier only attaches when the duty of immediate transportation arises. It then shifts from that of warehouseman, although the goods remain unmoved in the storehouse. Whether the responsibility be in one capacity or the other is seldom a matter of express agreement between the parties. It arises out of the relation which the parties sustain, and the duties which the law imposes. These propositions are elementary, and need no extended citation of cases."

In *London, etc., Ins. Co.* v. *Railroad Co.*, 144 N. Y. 200 (39 N. E. 79, 43 Am. St. Rep. 752), it was said:

"The rule as to the responsibility of the carrier is laid down in varying phraseology in a variety of cases, as follows: To render a common carrier liable for goods to be carried by him, the fact that the goods were actually delivered to him, or to some person authorized to act in his behalf, must be established.

His liability attaches only from the time he accepts the goods to be carried.    To complete the delivery of goods to the carrier it is essential that the property be placed in a position to be cared for, and under the control of the carrier or his agent, with his knowledge and consent.    The liability of a railroad company as common carrier of goods delivered to it attaches only when the duty of immediate transportation arises.    So long as the shipment is delayed for further orders as to destination of the goods, or for the convenience of the owners, the liability of the company is that of warehousemen."

See, also, *Chicago, etc., R. Co.* v. *Powers,* 73 Neb. 816 (103 N. W. 678) ; *Kansas City, etc., R. Co.* v. *Cox,* 25 Okla. 774 (108 Pac. 380, 32 L. R. A. [N. S.] 313) ; *Dixon* v. *Railway Co.,* 110 Ga. 173 (35 S. E. 369) ; *Wells* v. *Railroad Co.,* 51 N. C. 47 (72 Am. Dec. 556) ; *O'Neill* v. *Railroad Co.,* 60 N. Y. 138; *Stewart, Ralph & Co.* v. *Gray & Bro.,* 93 Tenn. 314 (27 S. W. 664) ; *Burrowes* v. *Railway Co.,* 85 Neb. 497 (123 N. W. 1028, 34 L. R. A. [N. S.] 220) ; *Reed and Walker* v. *Railroad Co.,* 3 Houston (Del.), 176, 209; *Illinois Cent. R. Co.* v. *Hornberger,* 77 Ill. 457; L. R. A. 1916C, 608, note.

The case of *Barron* v. *Railroad Co.,* 2 Ala. App. 555 (56 South. 862), is upon principle analogous to the instant case.    The plaintiff shipped lumber from Brent, Alabama, to Cairo, Illinois.    He had a stopover privilege, sometimes referred to as "manufacturing in transit," permitting him to dress or plane the lumber at a planing mill near Tuscaloosa, Alabama; while at this mill the lumber was destroyed by fire. It was said by the court:

"The defendant, by its two special pleas, admitted that it received the lumber for transportation to Cairo, Ill., and admitted that the lumber was never delivered at that point.    The defense set up was that 'the lumber was received for transportation upon the express agreement that the carrier would tempo-
230—Mich.—39.

rarily surrender the possession to the plaintiff or its agent at the Harder planing mill, near Tuscaloosa, Ala., for the purpose of having same dressed;' and it was averred that, in compliance with said agreement, the defendant delivered said lumber to the plaintiff or its agents at the said Harder planing mill, and that while it was in the plaintiff's possession, or the possession and control of his agents, the same was destroyed by fire, without any fault on the part of the defendant.   While the defendant, in the absence of some special contract limiting and qualifying its common-law liability, is an insurer of the goods to the point of destination, and until the consignee has had a reasonable time in which to remove the goods, yet this rule necessarily contemplates that after the goods are once committed to the carrier, its possession and control continues over every mile of the route, and during every hour of the time, until the arrival of the goods at the point of destination.   We know of no rule of law and no principle of public policy, and our attention has been called to none, which would hold the carrier an insurer while the goods, by some agreement with the owner, are temporarily out of the possession or control of the carrier, and while the same are actually in the possession of the owner, or some one as his agent.   Under the averments of the special pleas, the lumber was neither actually nor constructively in the possession of the defendant at the time of the burning, but it was at that very moment of time in the possession of the Harder planing mill, and the possession of the latter was the possession of the plaintiff.   It must follow, therefore, that, at the time of the destruction of the lumber, the rule making the carrier an insurer of the goods, in the absence of some special contract, finds no real application to the facts in this case."

These and other authorities which might be cited clearly demonstrate that before the relation of shipper and carrier can arise and the liability of insurer attach to the carrier the goods must be in a condition for immediate shipment with nothing left to be done to them and they must pass out of the possession and control of the shipper into the possession and control

of the carrier and be received by the carrier for immediate shipment.    While the transportation company may under certain circumstances be liable for unreasonable refusal to accept shipments, a subject to which I shall presently refer, its refusal to accept goods offered does not impose upon it the liability of common carrier as an insurer because it does not create the relation of shipper and carrier, a relation necessary to impose such liability.    Under all the authorities the goods must be accepted for transportation in order to create such relations and impose such liability.    When the first shipment came to an end by the accident to the Alabama and a new contract was made by the parties, the relation of shipper and carrier was at an end.    While the plaintiff was doing the work of putting the goods in condition for reshipment the relation of shipper and carrier did not exist, and not until that work was completed and the goods again delivered to and accepted by defendant for immediate shipment could such relation be reestablished.

The fact is stressed that the original bill of lading was not canceled, and that when the goods again went forward it was agreed they should go forward under the original bill of lading.    Plaintiff can claim no greater rights from this than it could if a new bill of lading had been issued.    The shipment was an interstate shipment, and the view of the Supreme Court of the United States is instructive.    In *Missouri Pacific R. Co.* v. *McFadden,* 154 U. S. 155 (14 Sup. Ct. 990) Mr. Justice White, speaking for the court, said:

"Whilst the authorities may differ upon the point of what constitutes delivery to a carrier, the rule is nowhere questioned that when delivery has not been made to the carrier, but, on the contrary, the evidence shows that the goods remained in the possession of the shipper or his agent after the signing and passing

of the bill of lading, the carrier is not liable as carrier under the bill."

See, also, *St. Louis, etc., R. Co.* v. *Knight*, 122 U. S. 79, 93 (7 Sup. Ct. 1132) ; *Morrison Grain Co.* v. *Railway Co.*, 182 Mo. App. 339 (170 S. W. 404). In our recent case of *Alvin R. Durham Co.* v. *Railway Co.*, 224 Mich. 477, although the freight had been paid and the bill of lading surrendered we held the relation of carrier and shipper still existed and in so doing we but followed a recent decision of the United States Supreme Court in construing the uniform bill of lading.

If the carrier unreasonably discriminates against a shipper, unreasonably refuses to accept goods for shipment, unreasonably delays shipments, he may be liable for such damages as result. But damage by fire to the goods while still in the custody of the shipper is not recoverable because the delay is not the proximate cause of the damages. In *St. Louis, etc., R. Co.* v. *Insurance Co.*, 139 U. S. 223 (11 Sup. Ct. 554), it was said by Mr. Justice Gray, speaking for the court:

"The delay of the defendant railway company to furnish transportation according to its contract with the compress company was in no legal sense a cause of the destruction of the cotton. It was simply one of a series of antecedent events without which the loss could not have happened, for, if the cotton had not been there, it would not have been burned. The cause of the loss was the fire, kindled by some unknown means, and in no way arising from or connected with the neglect of the defendant to furnish transportation. Upon principle and authority, that neglect was not the direct and proximate cause of the loss by fire, and did not make the defendant responsible for that loss to the owners of the cotton or to their insurers."

See, also, *McLane, Swift & Co.* v. *Botsford Elevator Co.*, 136 Mich. 664 (112 Am. St. Rep. 384) ; *Martin* v. *Railway Co.*, 55 Ark. 510 (19 S. W. 314).

I think we may with profit consider a few of our own cases.    In *Michigan Southern, etc., R. Co.* v. *Shurtz,* 7 Mich. 515, the plaintiff had delivered to the railroad company a quantity of wheat to be shipped and had been given a receipt therefor, but had not left shipping instructions.    The wheat was destroyed by fire.    It was held that the liability of the railroad company as a common carrier had not attached and it was said by Chief Justice MARTIN:

"When the goods are delivered to be transported to a specified point, the liability of the company as carriers commences immediately; but if they are deposited to await orders—if the company can not carry them because ignorant of the contemplated destination, or because no destination has been concluded upon by the owner, it would be gross injustice to hold them subject to the extraordinary liabilities of common carriers, while thus awaiting the determination of their owner.    While the wheat was lying in their warehouse awaiting the determination of Shurtz as to its destination, the company can not be regarded as anything more than gratuitous bailees, and are liable only as such."

In *Hasse* v. *Express Co.,* 94 Mich. 133 (34 Am. St. Rep. 328), plaintiff had sent by express three c. o. d. packages to Marquette.    Notice to one of the consignees was given and the other two called and said they would pay for and take the packages in a few days.    The packages were destroyed by fire.    It was held that the liability as a common carrier was at an end, that the only liability was that of a warehouseman and that plaintiff could not recover.

In *Stapleton* v. *Railway Co.,* 133 Mich. 187, the agent of the plaintiff collected empty bottles and cases and left them at defendant's station and they were shipped over defendant's line.    It was the claim of the agent that the goods were ready for shipment and he had notified defendant's agent to ship them out.    Defendant claimed that the agent of plaintiff was in the habit

of bringing the bottles to the platform and then sorting them and getting them ready for shipment and then notifying defendant's agent that they were ready for shipment when a bill of lading was issued and the goods shipped out, and that on this occasion he had no notice to ship. The goods were destroyed by fire. It was held (we quote from the syllabus) :

"When a consignor of goods delivers them to the railroad company, relinquishing all control over them, the company becomes immediately liable as a common carrier; but if the goods are merely placed in the company's depot for the consignor's convenience, and are not ready for shipment until he has done something further to them, the company is not so liable."

And it was said by Mr. Justice MOORE, speaking for the court:

"If in this case Mr. Bogue had done all he intended to do to the goods before the goods were shipped, and had notified the agent of the defendant they were ready for immediate shipment, and the agent agreed to forward them, that would be sufficient to make the company liable as a common carrier.    5 Am. & Eng. Enc. Law (2d Ed.), 180.    If this had not been done, it would not have been so liable."

I think the judgment should be reversed and the case remanded with instructions to enter judgment for the defendant *non obstante veredicto*.

CLARK, J., concurred with FELLOWS, J.